**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEON PATRICK,** | ) | |
| **Plaintiff,** | ) | No. 14-cv-3658 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| **CITY OF CHICAGO** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff's Motion for Reconsideration [72] is granted in part and denied in part. Count I of Plaintiff's complaint is hereby reinstated. Count III remains dismissed, but this dismissal is modified to be without prejudice. Plaintiff may file an amended complaint within 21 days of the date of this order.

## STATEMENT

On December 17, 2014, the Court granted in part Defendants' motions to dismiss. (Dkt. # 66.) As relevant here, the Court dismissed Counts I and III of Plaintiff's complaint. Plaintiff now moves for reconsideration of these rulings. (Pl.'s Mot. Recons., Dkt. # 72.) In light of a recent Seventh Circuit decision clarifying the circumstances under which Fifth Amendment claims are time-barred, the Court reinstates Count I of Plaintiff's complaint in its entirety. Plaintiff's motion for reconsideration of the dismissal of Count III is denied. However, the Court reverses its decision to deny Count III with prejudice and Plaintiff is granted leave to amend.

## Background

The factual background of this case is set forth more fully in the Court's previous order ruling on the motions to dismiss, and is known to the parties. What follows is only the information from Plaintiff's complaint most relevant to the instant motion. The Court presumes that the facts alleged in Plaintiff's complaint are true for the purpose of ruling on Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Plaintiff and six co-defendants were convicted of the November 16, 1992 murders of Jeffery Lassiter and Sharon Haugabook, and Plaintiff subsequently spent 21 years in prison before his conviction was vacated and a Certificate of Innocence was issued to him by the Circuit Court of Cook County. (Compl., Dkt. # 1 ¶¶ 1-2, 13.) No physical evidence tied Plaintiff to the crime. (*Id*. at ¶ 45.) Instead, Plaintiff was implicated primarily by his own confession to police, which was secured by police officers confronting Plaintiff with the incriminating false confessions of his co-defendants – all of which were the product of prolonged and coercive interrogation without counsel present. (*Id*. at ¶¶ 19-31.)

Officers knew that these confessions could not have been accurate because they conflicted with evidence known to the police and included facts that could not have been true. (*Id*. at ¶¶ 20-23.) Plaintiff alleges three specific instances relevant here in which police officers concealed evidence inconsistent with the false confessions or fabricated evidence to corroborate them. Faye McCoy, a witness who saw the murderers leaving the scene, viewed Plaintiff and other co-defendants at the police station but stated that none were the men she had seen leaving the victims' apartment. (*Id*. at ¶ 34.) The results of this lineup were not documented, and instead officers falsely reported that McCoy was afraid to testify in court. (*Id*.) Daniel Taylor, a co-

defendant who all the confessions placed at a park prior to the murders and at the murder scene, was in fact in police lockup on an unrelated arrest at the relevant times. (*Id.* at ¶¶ 35-36.) Taylor informed officers of this fact sometime after having made his false confession, and his account was corroborated by police records and by the testimony of a man named James Anderson who had shared Taylor's cell in lockup that night. (*Id.* at ¶¶ 36, 41.) Police turned over two General Progress Reports to defense counsel which identified Anderson and stated that officers could not locate him. (*Id.* at ¶ 41.) Officers did, however, eventually locate and speak with Anderson, but neither the interview notes nor any report regarding Anderson's testimony was disclosed to Plaintiff. (*Id.* at ¶¶ 41-42.) In order to corroborate the false confessions and rebut the fact that Taylor was in police custody before and during the murders, police officers convinced Adrian Grimes to falsely testify that he saw Taylor and the other co-defendants meeting in a park while Taylor was actually in lockup. (*Id.* at ¶¶ 37-38.) Officers secured this false testimony by threatening Grimes with drug charges and offering leniency in exchange for his testimony, but details of this coercion were not disclosed to Plaintiff and his co-defendants. (*Id.* at ¶ 39.)

Following his exoneration 21 years later, Plaintiff filed the instant suit, alleging 13 counts of various civil rights violations. As relevant here, Count I of Plaintiff's complaint alleged that Defendants violated Plaintiff's Fifth Amendment right against self-incrimination by coercing Plaintiff to confess to a crime he did not commit. Count III of Plaintiff's complaint alleged that Defendants violated Plaintiff's due process rights by withholding exculpatory evidence prior to Plaintiff's trial. The Court dismissed Count I on the grounds that it was time barred, because Plaintiff failed to bring this claim within the two-year statute of limitations period applicable to § 1983 claims in Illinois. (Dkt. # 66, at 6-9.) The Court then dismissed Count III because it found

that all of the allegedly exculpatory evidence in question was available to the defense through the exercise of reasonable diligence, and was thus not suppressed within the meaning of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (*Id*. at 12-14.) Plaintiff now moves for reconsideration.

## **Legal Standard**

Motions to reconsider interlocutory orders are governed by Federal Rule of Civil Procedure 54(b). This Rule provides that any order that does not resolve all claims as to all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). As such, the Court may, at its discretion, reconsider its ruling on Defendants' motions to dismiss. *See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12 (1983) (holding that "every order short of a final decree is subject to reopening at the discretion of the district judge"). While motions to reconsider are permitted, however, they are disfavored. Such motions "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura,* 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996)). A manifest error of law or fact under this standard occurs when a district court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). A party asserting such an error bears a heavy burden, and motions for reconsideration "are not at the disposal of parties who want to 'rehash' old arguments." *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005).

**Discussion**

For the following reasons, the Court reinstates Count I of Plaintiff's complaint but declines to reinstate Count III.

COUNT I: FIFTH AMENDMENT CLAIM

In Count I, Plaintiff alleges that the police officer Defendants and Defendant Magats violated his Fifth Amendment right against self-incrimination by forcing him to make a false confession. The Court ruled this claim was time-barred because Plaintiff did not assert it within two years of its accrual.

That a claim falls outside the limitations period is an affirmative defense, and as such Defendants have the burden of showing that Plaintiff's claims are time barred. *See Jogi v. Voges*, 480 F.3d 822, 836 (7th Cir. 2007). Because a complaint need not anticipate and refute affirmative defenses to survive a motion to dismiss, it need not include facts showing that it is timely. *See Richards v. Mitcheff,* 696 F.3d 635, 637–38 (7th Cir. 2012). However, while a complaint is not obligated to affirmatively plead timeliness, dismissal is appropriate where it is "clear from the face" of the complaint that it is "hopelessly time-barred." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 675 (7th Cir. 2009).

As § 1983 does not have an express statute of limitations provision, federal courts hearing § 1983 claims adopt the limitations period for personal injury claims applied in the relevant forum state. *See Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998). Here, the statute of limitations in Illinois for personal injury claims – and thus applicable to Plaintiff's §

1983 claims – is two years. *See Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). The question before the Court is when Plaintiff's Fifth Amendment claim accrued – at the time his false confession was admitted against him at trial, or in January 2014 when his conviction was vacated and he was released from prison.

Plaintiff argues that under the rule established in *Heck v. Humphrey*, 512 U.S. 477 (1994), his § 1983 claim could not have accrued when he was incarcerated because a challenge to the voluntariness of his confession would have necessarily undermined the validity of his conviction. *See Heck*, 512 U.S. at 486-87 (noting that a plaintiff can only seek damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" if that conviction or sentence has already been expunged or declared invalid). If Plaintiff could not have made his Fifth Amendment claim while he was incarcerated because "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," *Heck* holds that accrual of that claim was delayed until Plaintiff's release. *Id.* at 487.

The decision in *Heck*, however, failed to make clear whether the delayed accrual test is a categorical one (in which the general nature of the claim determines whether accrual is delayed) or whether it is a fact-specific inquiry which depends on whether a plaintiff's *particular* claim would necessarily impugn his conviction. The Seventh Circuit clarified in *Wallace v. City of Chicago* that a categorical rule applies to § 1983 claims for false arrest. *See* 440 F.3d 421, 426-27 (7th Cir. 2006) (holding that a "clear rule for false arrest claims" is preferable to "an evaluation of the evidence," and that claims for false arrest must accrue immediately at the time of arrest regardless of the facts of an individual case). While the opinion in *Wallace* failed to specify whether Fifth Amendment coerced confession claims were subject to a similar

6

categorical rule, the Seventh Circuit in an unpublished opinion suggested that they were – at least where the prospective plaintiff had pled guilty, because in that case his conviction rested not only on his confession but also on his plea, and a § 1983 claim challenging the confession would not necessarily imply that the conviction was invalid. *See Franklin v. Burr*, 535 Fed. Appx. 532, 533-34 (7th Cir. 2013).

At the time the Court confronted this question in its December 17, 2014 order, whether Fifth Amendment claims involving a conviction *not* secured by a guilty plea were subject to a bright-line rule was unclear. The Court reviewed the then-available precedent and concluded that a categorical rule applied to all Fifth Amendment claims; because a claim that a confession was coerced does not "invariably impugn a plaintiff's conviction," such a claim is not subject to the delayed accrual rule in *Heck*. (Dkt. # 66, at 9.) Plaintiff's claim that his confession was involuntary accrued as soon as his confession was used against him at trial, and the Court therefore dismissed this claim as time barred. (*Id.*)

Plaintiff urges the Court to reconsider this ruling in light of the Seventh Circuit's decision in *Matz v. Klotka*, 769 F.3d 517, 530-31 (7th Cir. Oct. 6, 2014), which issued before the Court's December 17 order but after the parties had briefed the motions to dismiss. While Plaintiff concedes that *Matz* does not constitute a change in the controlling law for purposes of a motion for reconsideration, he argues that the decision in *Matz* is inconsistent with the Court's dismissal of his Fifth Amendment claim and therefore demonstrates that the Court's analysis of this issue was erroneous. (Pl.'s Reply, Dkt. # 78 at 5) ("*Matz* is being used not to show a fundamental change in the controlling law…but rather to show that this Court's interpretation of *Wallace*, *Franklin*, and *Saunders*, and in turn their interpretations of *Heck*, was incorrect.")

7

In *Matz*, a still-incarcerated plaintiff brought suit against several police officers alleging that his Fifth Amendment rights were violated prior to his guilty plea. 769 F.3d at 521-22. The district court granted summary judgment for the officers, concluding that "because both his conviction and sentence depended in part on the confession, Matz's challenge was barred by *Heck*." *Id*. at 522. The Seventh Circuit affirmed, because a reading of Matz's sentencing transcript revealed that his confession figured prominently in the judge's decision to sentence him to consecutive rather than concurrent terms. The court therefore ruled that a challenge to Martz's confession was barred under *Heck*. *Id*. at 531 ("Matz cannot pursue a § 1983 claim for damages premised on his allegedly coerced confession because success on his claim would call into question his sentence"). The decision in *Matz* thus clarifies that whether a Fifth Amendment claim is *Heck*-barred is a case-by-case inquiry, not a categorical rule; the Seventh Circuit did not simply end its inquiry by noting that the plaintiff raised a Fifth Amendment claim, but examined his sentencing transcript to determine the role his confession played in his sentence. Because the Seventh Circuit engaged in precisely the sort of fact-intensive, case-specific examination that this Court held not appropriate for Fifth Amendment claims in its prior order, the portion of that order that dismissed Plaintiff's claims as time barred must be reconsidered.

The Court now turns to the specific allegations of Plaintiff's Fifth Amendment claim in order to determine whether success on this claim – if brought before Plaintiff's conviction was vacated – would necessarily have implied the invalidity of his conviction. At the motion to dismiss stage, analysis of this question is hampered by the complete lack of a factual record. The Court must accept as true the allegations in Plaintiff's complaint regarding the role his confession played in securing his conviction. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

Plaintiff's complaint alleges that his coerced confession was "the only evidence used against him at trial" and that no other evidence linked him to the murders. (Compl., Dkt. # 1 at ¶¶ 45, 49.) While Defendants insist that other evidence linked Plaintiff to the crime, the motion to dismiss stage is not the appropriate time for them to challenge the factual allegations of the complaint; if other evidence at trial in fact implicated Plaintiff, Defendants may raise the statute of limitations defense on summary judgment. Dismissal of a claim on statute of limitations grounds is appropriate only where it is clear from the face of the complaint that the claim is not timely. *Cancer Found., Inc.*, 559 F.3d at 675. If Plaintiff's allegation that his confession was the only evidence admitted against him is accepted as true, his Fifth Amendment claim would necessarily implicate the validity of his conviction. As such, he could not have brought such a claim until his conviction was vacated, and the claim did not accrue until Plaintiff's conviction was vacated in 2014. Count I of Plaintiff's complaint is therefore not clearly time barred, and the count is hereby reinstated.

COUNT III: SUPPRESSION OF EXCULPATORY EVIDENCE

In Count III, Plaintiff alleges that Defendants violated his constitutional right to due process by withholding exculpatory evidence prior to trial. Specifically, Plaintiff claims that the following information was suppressed: (1) statements made by his co-defendants that neither they nor Plaintiff were involved in the shootings; (2) Faye McCoy's statement that neither Plaintiff nor his co-defendants were among the men she saw leaving the crime scene; (3) the fact that Adrian Grimes' statements were false and coerced; and (4) the statements of James

9

Anderson regarding Taylor's presence in lockup, as well as notes taken at that interview and any General Progress Report memorializing the interview. (Pl.'s Mot. Recons., Dkt. # 72 at 9-10.)

Prosecutors have a constitutional duty to disclose material, exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). To state a claim under *Brady*, Plaintiff must allege that: (1) the evidence is exculpatory or impeaching; (2) the evidence was suppressed by the government; and (3) he was prejudiced as a result. *See Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007). Evidence is suppressed where "the prosecution failed to disclose the evidence before it was too late" for the defendant to make use of it and the evidence "was not otherwise available to the defendant through the exercise of reasonable diligence." *Id*.

The Court dismissed Count III on the grounds that none of the evidence Plaintiff identifies was actually suppressed, as it was all available to Plaintiff's defense counsel through the exercise of reasonable diligence. The Court noted that Plaintiff was well aware that he and his co-defendants were innocent, and as such was fully equipped to challenge incriminating statements by Grimes, McCoy, and his co-defendants as false. With regards to Anderson, Plaintiff was given a report identifying him and his role in potentially challenging Taylor's alibi, and Plaintiff therefore could have investigated Anderson's version of events on his own. Plaintiff now moves for reconsideration on the grounds that the Court "misapplied the 'reasonable diligence' prong of the *Brady* doctrine." (Pl.'s Reply, Dkt. # 78 at 8.)

Plaintiff concedes that the Seventh Circuit's voluminous case law on the exceptional nature of motions for reconsideration is intended to prevent litigants from arguing "please take a closer look at what we argued the first time." (*Id*. at 2, n.1.) Yet it is hard to construe Plaintiff's arguments as to Count III as anything but. Plaintiff's motion for reconsideration cites precisely the

same authority and raises precisely the same arguments as did his briefings on the motions to dismiss. The "manifest error" Plaintiff complains of is simply that the Court held his asserted *Brady* material was discoverable with reasonable diligence when Plaintiff continues to believe it was not. Unlike Count I addressed above, Plaintiff can point to no newly-available appellate decisions that would lead the Court to reconsider its analysis of Count III, no new evidence, and no instance in which the Court committed "an error not of reasoning but of apprehension." *Bank of Waunakee,* 906 F.2d at 1191. As such, he has failed to meet his heavy burden of showing that the Court's dismissal of Count III was premised on manifest error. *See Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A manifest error is not demonstrated by the disappointment of the losing party, instead it is the wholesale disregard, misapplication, or failure to recognize controlling precedent") (quotation marks omitted).

As the Court has already confronted and resolved all of Plaintiff's arguments in its prior order, it is not necessary to reiterate that reasoning here in full. An abbreviated review of Plaintiff's arguments and the Court's reasons for rejecting them will suffice. The law in this circuit is clear that it is a criminal defendant's "responsibility to probe the witnesses and investigate their versions of the relevant events." *Carvajal v. Dominguez*, 542 F.3d 561, 567 (7th Cir. 2008). Plaintiff does not allege that his co-defendants, McCoy, Grimes, or Anderson were impossible for his defense counsel to interview or would have lied had Plaintiff questioned them; the facts as alleged in the complaint leave no doubt that the defense not only had access to the identities of these witnesses but was aware of their roles in the case. For this reason, Plaintiff's continued reliance on *Boss v. Pierce*, 263 F.3d 734 (7th Cir. 2001) is unavailing. As discussed at length in the Court's prior order, *Boss* involved statements by the defense's *alibi* witness that she had heard a third party confess to the crime. The Seventh Circuit's analysis relied on the fact that defense counsel could hardly have expected an alibi

witness to possess exculpatory evidence unrelated to the defendant's alibi; the exercise of reasonable diligence simply would not have turned up the evidence in question, and the prosecution therefore had a duty to disclose the witness's statements to the defense. Here, by contrast, the allegedly suppressed evidence related directly to each witness's clearly established role in the case. A criminal defendant may not be expected to ask an alibi witness for evidence unrelated to the alibi issue, but reasonable diligence certainly entails questioning available fact witnesses regarding what they saw. Plaintiff's objection to Defendants' conduct appears to be not so much that they suppressed evidence as that the evidence they ultimately produced was fabricated or otherwise secured by misconduct. Such a claim is "more appropriately characterized as a claim for malicious prosecution" than a *Brady* violation. *Saunders-El v. Rohde*, No. 14-1570, 2015 WL 400559, at *5 (7th Cir. Jan. 30, 2015) (holding that where a plaintiff "seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing… our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations").

Plaintiff also insists that the Court misapplied the Rule 12(b)(6) standard because "the Court drew all factual inferences against [Plaintiff], such as by incorrectly finding that the State's identification of a witness in a report automatically means that a plaintiff exercising reasonable diligence would be able to locate that witness and extract from that witness all the same favorable evidence that the witness disclosed to the State." (Pl.'s Mot. Recons., Dkt. # 72 at 11-12.) In so doing, Plaintiff badly mischaracterizes the Court's reasoning and attempts to relabel the Court's legal rulings as factual findings. Nowhere in its prior order did the Court resolve any factual disputes against Plaintiff. Rather, the Court accepted as true the facts stated in Plaintiff's complaint – that the witnesses in question made exculpatory statements to the police and that Plaintiff received only the

12

identities of the witnesses at issue, and not any details regarding the police misconduct that colored their testimony. The Court then concluded that under such facts, the "suppressed" evidence was available to Plaintiff through reasonable diligence as a matter of law.

Accordingly, the Court will not reconsider its dismissal of Count III of Plaintiff's complaint.

DISMISSAL OF COUNT III WITH PREJUDICE

In addition to reiterating his arguments that Count III should not have been dismissed, Plaintiff also argues that the Court erred by dismissing the count with prejudice rather than giving him leave to amend his *Brady* claims. In support of leave to amend, Plaintiff asserts that he has since become aware of three additional pieces of material evidence that Defendants failed to disclose to him prior to trial and which could form the basis for a new *Brady* claim: (1) a list of the detainees held in CPD lock-up on November 16, 1992; (2) a list of CPD officers on duty in the lock-up that night, including officers not on the State's witness list; and (3) a General Progress Report setting forth a detailed chronology of Daniel Taylor's whereabouts on the night of the murders. (Pl.'s Mot. Recons., Dkt. # 72 at 14-15.)

The Federal Rules of Civil Procedure dictate that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). As a general rule, amendment of dismissed claims should be liberally permitted. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible"). Nonetheless, "courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008). While its

prior order failed to articulate the reasoning underlying the dismissal with prejudice, the Court dismissed Count III with prejudice because amendment would be futile. Amendment of the complaint regarding the four pieces of evidence in Count III would indeed be futile, because for the reasons discussed above, the evidence was not suppressed under the meaning of *Brady*. The question of whether Plaintiff should be permitted to assert a *Brady* claim as to the three new pieces of evidence, however, requires closer examination.

Defendants insist that amendment to include the new evidence would be futile because a *Brady* claim based on such evidence could not survive a motion to dismiss, as the new evidence Plaintiff offers was not material to Plaintiff's defense and was available to Plaintiff through the exercise of reasonable diligence. All of the evidence relates to Taylor's alibi rather than Plaintiff's, and as such was of indirect significance to Plaintiff's defense to the murders. However, given that Plaintiff's confession – which was admitted against him at trial – included statements that Taylor was present for the murders, evidence bolstering Taylor's alibi would tend to cast doubt on the truthfulness of Plaintiff's confession. Moreover, the availability of the three new documents to the defense is not so obvious as to justify a departure from the usual practice of permitting liberal amendment of pleadings. Accordingly, amendment of the complaint to include the proposed new Brady material would not necessarily be futile.

As Defendants note, however, Plaintiff's new *Brady* evidence is not actually new; Plaintiff had referenced (and attached copies of) these documents in his motion for post-conviction relief a full nine months prior to filing this civil case. (Defs.' Joint Resp., Dkt. # 76 at Ex. 1, pp 15-16.) Defendants insist that they would be prejudiced by leave to amend because they "would be forced to endure yet another round of motions to dismiss on matters that could have and should have been asserted in the first instance." (*Id*. at 14.) Plaintiff concedes that he

14

was aware of the existence of this material at the time he filed his complaint, but justifies its omission by insisting that he was not aware Defendants possessed these documents prior to his trial and thus "could not plead that the failure to turn these documents over fell on the named Defendants." (Pl.'s Reply, Dkt. # 78 at 11-12.) Plaintiff's argument is at best unconvincing, at worst; it is a misrepresentation of the historical procedural facts. The documents at issue were created by the CPD prior to Plaintiff's trial; indeed, he specifically asserted them as withheld *Brady* material in his motion for post-conviction relief. It is unclear how Plaintiff could hold up these documents as wrongfully withheld in his exoneration proceedings yet insist that he was powerless to include them as wrongfully withheld in his complaint. In light of the fact that Plaintiff's complaint listed as defendants not only several named officers and prosecutors, but also the City of Chicago, Cook County, and "unidentified employees" of both, his assertion that at the time he filed his complaint he could not trace CPD documents to the possession of any of the Defendants is difficult to credit.

Nevertheless, Plaintiff's delay in raising claims as to the new *Brady* material is not so excessive as to be "undue" for purposes of leave to amend. Discovery in this case has not yet closed, leaving the parties sufficient opportunity to develop the factual record as to the new claim. Defendants' have identified no prejudice to them beyond the inconvenience of having to move for dismissal of the new claim, and such inconvenience does not outweigh the liberal policy toward leave to amend embodied in Rule 15(a). Accordingly, the dismissal of Count III is altered to be without prejudice. Plaintiff may file an amended complaint within 21 days of the date of this order.

## **Conclusion**

For the reasons set forth above, Plaintiff's Motion for Reconsideration [72] is granted in part and denied in part. Count I of Plaintiff's complaint is hereby reinstated. Count III remains dismissed, but this dismissal is modified to be without prejudice. Plaintiff may file an amended complaint within 21 days of the date of this order.


**SO ORDERED.**                                    ENTERED:   March  23, 2015


*[signature]*

**HON. RONALD A. GUZMAN**
**United States District Judge**