**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEON PATRICK,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 3658 |
| | ) | |
| v. | ) | Judge Guzman |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | Magistrate Judge Cole |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

Mr. Patrick has filed a motion to compel the Cook County State's Attorney's Office ("SAO") to produce almost 300 pages of documents that it withheld from production on the grounds of the work product doctrine and the deliberative process privilege. [Dkt. #102]. The facts are these.

In early February 2014, Daniel Taylor filed a Complaint in this court alleging that he, Deon Patrick, and four others had been coerced into confessing to a brutal double murder that they did not commit. As a consequence of the alleged misconduct, Mr. Taylor, who was 17 years old at the time, was forced to spend more than 20 years in prison before he was ultimately exonerated. (14 C 737, Dkt. #1). The case was assigned to Judge Lee. Three months later, Mr. Patrick filed his own Complaint, and the case was assigned to Judge Guzman. (14 C 3658, Dkt. #1). Mr. Patrick's Complaint charged that he spent over 21 years in prison for the same double murder involved in the *Taylor* case – a crime he did not commit. (*See also* Dkt. #92, First Amended Complaint). On January 10, 2014, the Cook County State's Attorney's Office ("SAO") moved "in the interest of justice" to vacate Mr. Patrick's conviction and to dismiss the criminal case against him in its entirety.

The Circuit Court of Cook County granted the Motion, and Mr. Patrick was immediately freed. On January 23, 2014, the Chief Judge of the Cook County Criminal Courts issued a Certificate of Innocence to Mr. Patrick, without opposition from the State. [Dkt. #92 at 2, ¶¶1-2].

Mr. Patrick agreed to participate in discovery in tandem with Mr. Taylor's case so that the parties would not have to duplicate depositions or produce the same documents in the two cases, arising as they did out of the same set of facts. Given the existence of this arrangement – which is not open to reasonable dispute – it was a binding agreement. *Cf.*, *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 795 (7th Cir. 2009); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984); *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 185 (N.D.Ill. 2006).[1]

**B.**

On May 9, 2014, Mr. Taylor's counsel served a subpoena on the SAO to produce a broad range of documents and information. [Dkt. #119, Ex. A].[2] The SAO responded to the Taylor subpoena on August 11 and 18, 2014 with Bates-numbered documents CCSAO 000001-019257, and supplemented the production on November 21, 2014 with Bates-numbered documents CCSAO 019258-19802. Unknown to Mr. Taylor's lawyers, the SAO had withheld numerous documents without producing the privilege log required by Rule 26(b)(5)(A), Federal Rules of Civil Procedure,

---

[1] The State's Attorney's Office has acknowledged the informal consolidation agreement with regard to discovery. [Dkt. #119 at 2, ¶5].

[2] When documents are sought from a nonparty, the usual method of compelling production is via a subpoena under Rule 45, Federal Rules of Civil Procedure. This includes work product held by a nonparty attorney. *Hobley v. Burge,* 433 F.3d 946, 949-950 (7th Cir.2006).

or otherwise disclosing that it had withheld documents.[3] Mr. Patrick argues with considerable force that he reasonably relied on the production of documents made in the *Taylor* case seven months earlier and presumed that if the materials responsive to the *Taylor* subpoena were not produced or listed in a privilege log as required by Rule 26(b)(5), Federal Rules of Civil Procedure, they did not exist.

On February 10, 2015, Mr. Patrick served expansive document requests on Joseph Magats and Martin Fogarty, two Assistant State's Attorneys named in the *Patrick* case. In their response on March 19, 2015, counsel for these defendants stated that a number of Mr. Patrick's requests for certain documents (i.e., SAO personnel files, the SAO criminal file, etc.) should instead be directed to the SAO and not the individual defendants. On April 21, 2015, Mr. Patrick served his own subpoena on the SAO to obtain the documents that Messrs. Magats and Fogarty said they could not produce because they did not have them. [Dkt. # 119-2, Ex. B]. On May 21 and 22, 2015, Mr. Castiglioni responded to the subpoenas. Four days later, he further clarified the answers to several questions raised in light of the initial responses.

Although the defendants do not agree with Mr. Patrick's claim that his 2015 subpoena encompassed the materials sought by the *Taylor* subpoena a year earlier, a comparison of the subpoenas reveals that in the main and with certain exceptions, there was a substantial overlap between them. *Compare* Ex. A *with* Ex. B, Dkt. #119.[4]

---

[3] The Rule requires that when a party withholds otherwise discoverable information by claiming a privilege, the party must: "(I) expressly make the claim; and (ii) describe the nature of the documents . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Sommerfield v. City of Chicago,* 252 F.R.D. 407, 418 (N.D.Ill. 2008).

[4] It was not until May 26, 2015, that Paul Castiglione, a representative of the SAO, affirmed that the
(continued...)

According to the plaintiff, the SAO's response to the Patrick subpoena revealed several new facts not previously disclosed in *Taylor*, including the fact that the so called "Blue-back" that was used during the criminal prosecution of Patrick and his seven co-defendants had been missing for several years and thus could not be produced. The "Blue-back" is a document that is provided in blank to the lead trial prosecutor at the time an indictment is returned. Mr. Needham, the lead prosecutor in the murder case against Patrick and Taylor, testified at his deposition that his practice was to use the "Blue-back" throughout the case to record significant events, including activities in court, which counsel participated in, and the date of that participation. Mr. Needham stated that the "Blue-back" is the place where he noted when he turned over documents to defense counsel.

It was further revealed that the SAO was not able to identify which documents constituted the SAO's trial file because it gave its original file to the Illinois Attorney General's Office when Mr. Taylor filed a federal habeas petition in 2011, and that Office did not keep it in order. Mr. Patrick's counsel also learned for the first time that when the SAO produced documents in the *Taylor* case in August and November 2014, it withheld some 48 documents without disclosing to Mr. Taylor (or to Mr. Patrick despite the discovery sharing arrangement) that it had done so.

The documents, consisting of approximately 300 pages, were withheld on the grounds of the work product doctrine and the deliberative process and the law enforcement privileges. As noted earlier, the existence of these documents was not disclosed in a privilege log as required by Rule 26(b)(5)(A). It was not until the defendants filed what they called an Amended Privilege Log on

---

[4](...continued)
SAO had not produced a privilege log in *Taylor*. (See May 26, 2015 email from Paul Castiglione to Daniel Wucherer, attached as Exhibit 1 to the Motion to Compel).

May 21, 2015, that there was any attempt to comply with the Rule as it related to these withheld documents.

When the SAO finally provided a privilege log relating to the withheld documents, discovery was coming to a close in this case. In light of the consolidated discovery arrangement between the lawyers in the *Taylor* and *Patrick* cases, the undisclosed withholding of documents Mr. Patrick contends, was as improper in the instant case as it was in the *Taylor* case and ought to lead to a waiver of any privilege now being claimed to justify withholding of the documents. The question is whether the belated filing of a privilege log covering the withheld documents requires that there be a finding that the defendants have forfeited the privileges they are now asserting.

**C.**

Since Rule 26(b)(5)(A) does not contain a time limit within which a privilege log must be submitted, the cases are not harmonious as to when a privilege log is impermissibly late and whether forfeiture of a claimed privilege is a consequence of a belated filing. *See* the discussion in *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Montana*, 408 F.3d 1142, 1147-1149 (9th Cir. 2005). Some cases find waiver resulting from untimeliness, *S.E.C. v. Yorkville Advisors, LLC,* 300 F.R.D. 152, 167 (S.D.N.Y. 2014), others do not. *Thermoset Corp. v. Building Materials Corp. of America,* 2015 WL 1565310, 6 (S.D.Fla. 2015); *McKeen-Chaplin v. Provident Savings Bank, FSB,* 2015 WL 502697, 11 (E.D.Cal. 2015). It is ultimately a discretionary decision, and thus cases holding one way or the other are not conclusive, for "'[t]he very exercise of discretion means that persons exercising discretion may reach different results from exact duplicates.'" *McCleskey v. Kemp*, 753 F.2d 877, 891 (5th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). *Accord Mejia v. Cook County, Ill.,* 650 F.3d 631, 635 (7th Cir. 2011); *United States v.*

5

*Banks,* 546 F.3d 507, 508 (7th Cir. 2008).

The difficulty with the plaintiff's waiver argument is that it is unsupported either by citation to authority or by an assessment of the factors that should inform an exercise of discretion in this case. Yet, an exercise of discretion requires a consideration of the factors relevant to that exercise. *Cf. United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007). Where, as here, there is no analysis, but only a conclusion, the point is waived. Indeed, the Seventh Circuit is consistent in holding that "[p]erfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." *Gyorgy v. C.I.R.,* 779 F.3d 466, 481 (7th Cir. 2015). *See U.S. Securities and Exchange Commission v. Benger*, 2014 WL 2198325, 7 n.10 (N.D.Ill. 2014) (collecting cases). Hence, Mr. Patrick has waived the waiver argument. *See G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 848 F.2d 1415, 1418 (7th Cir. 1988)("Centrale has waived its waiver argument by raising it in a perfunctory manner and by citing no authority."); *Miller Aviation v. Milwaukee County Bd. Of Supervisors*, 273 F.3d 722, 727 (7th Cir. 2001)(litigant "waived the waiver" argument).

Beyond the claim of unacceptable lateness, Mr. Patrick contends that there should be a forfeiture because the log does not comply with Rule 26(b)(5)(A) in that it fails to identify the documents in a manner that enables his counsel to assess the SAO's claims of privilege. Mr. Patrick contends that of the 48 distinct documents withheld, only seven identify the date of the documents, and only three identify the author. It is, Mr. Patrick insists, "simply impossible to assess anything about the nature of the privileges that the SAO purports to assert from the log that the SAO has provided." [Dkt. #102 at 4]. Given our disposition of the motion to compel, we need not decide this issue.

During the oral argument on Mr. Patrick's motion to compel, counsel for the parties agreed that a number of the documents originally withheld had, in fact, been turned over to Mr. Patrick's counsel and thus were no longer in dispute. They also agreed that there was no objection to turning over documents or portions thereof that did no more than recount historical events in the case. The defendants' concern focused on those portions of documents that they say went further and in their view revealed the authors' legal assessment, theories, impressions, recommendations, and would reveal the deliberative process of those reviewing the documents. Counsel for Mr. Patrick agreed that those portions of the withheld documents that fell within the ambits of the concerns defendants had raised need not be produced. But, Mr. Patrick's counsel asked that I review the documents *in camera,* and counsel for defendants acquiesced to that request.

The defendants submitted eight documents, (a number consisting of multiple pages),[5] for *in camera* review.[6] That review, which is always desirable and often essential to an informed judgment on privilege claims, see *Slaven v. Great American Insurance Co.,* 2015 WL 1247431, 8 (N.D.Ill. 2015)(collecting cases), reveals that with a few exceptions, the materials withheld by the defendant are producible and are not within the deliberative process privilege or the work product doctrine.

The deliberative process privilege covers "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions

---

[5] The defendants have said that of the 48 documents initially withheld, only 7 continue to be withheld. [Dkt. #119 at 2], ¶¶5-6]. However, in the package of materials delivered to me for *in camera* review, it appears there are 8 documents, one of which consists of one page (CCSAO 020317/SAO 1465) and two of which consist of three pages (SAO 07288-07290/CCSAO 020955-57; SAO 04221-223/CCSAO 020404-06). The remainder are multi-page documents. There are duplicates among the submitted documents.

[6] Two of the documents appear to be identical in content. *Compare* CCSAO 020274-877 / SAO 00836-877 *with* CCSAO 021228-890 / SAO 07849-890.

7

and policies are formulated.'" *Department of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1 (2001). *See United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993); *Parvati Corp. v. City of Oak Forest*, 2010 WL 2836739, 5 (N.D.Ill. 2010). The deliberative process privilege "does not justify the withholding of purely factual material, or of documents reflecting an agency's final policy decisions, but it does apply to predecisional policy discussions, and to factual matters inextricably intertwined with such discussions." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.,* 371 F.3d 370, 374–75 (7th Cir. 2004). "[I]n order to qualify for the privilege, a document must be both [1] predecisional in the sense that it is actually antecedent to the adoption of an agency policy, and [2] deliberative in the sense that it is actually ... related to the process by which policies are formulated." *Id.* at 375. A party seeking documents within the scope of the deliberative process privilege may require production of the documents by showing that the party's need for the documents outweighs the government's interest in confidentiality. *Farley,* 11 F.3d at 1389–90; *U.S. Equal Employment Opportunity Commission v. Dolgencorp, LLC,* 2015 WL 2148394, 3 (N.D.Ill. 2015).

The work product doctrine, codified in Rule 26(b)(3), Federal Rules of Civil Procedure*, Hobley*, 433 F.3d 949, establishes a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary. *Sandra T.E. v. South Berwyn Sch. Dist. 100,* 600 F.3d 612, 618 (7th Cir. 2010). Its protection is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975). It protects "documents ... prepared in anticipation of litigation or for trial by or for another party or its representative" for the purpose of analyzing and preparing a client's case. Rule 26(b)(3). A lawsuit need not be underway for the doctrine to apply "provided the prospect of litigation [is] not remote." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006). A majority of courts have

8

held that the privilege endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related. *Hobley*, 433 F.3d at 949.

What is often called "core work product" consists of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Rule 26(b)(3)(B). Materials containing this information "are out of bounds...." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006). Underlying the work product doctrine is the deeply felt perception that the opposing party "shouldn't be allowed to take a free ride on the other party's research, or get the inside dope on that party's strategy, or. . . invite the [trier of fact] to treat candid internal assessments of a party's legal vulnerabilities as admissions of guilt." *Menasha Corp. v. U.S. Dept. of Justice*, 707 F.3d 846, 847 (7th Cir. 2013).

However, work product protection, like the deliberative process privilege, only prevents the disclosure of protected documents or communications, not the underlying facts. *Upjohn*, 449 U.S. at 395–96. It is the burden of the party seeking work-product protection to establish its applicability to the documents claimed to be protected. *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2nd Cir. 2003). And, like the deliberative process privilege, the work-product doctrine interferes with the public's right to obtain evidence, and thus must be strictly construed and accepted "'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980). *See also Howell v. City of New York*, 2007 WL 2815738, *1 (E.D.N.Y. 2007).

Of course, there are instances in which a claim of work product must yield to a claim for disclosure as when the party seeking disclosure can show "it has substantial need for the materials

9

to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Rule 26(b)(3)(A)(ii). Additionally, although a report prepared in anticipation of litigation is work product, the party must disclose that report if its author plans to testify at trial. *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1022-23 (7th Cir. 2012).

To claim work product privilege, a number of cases have held that the party resisting production must be a party to the case. *Ostrowski v. Holem*, 2002 WL 31956039 *4 (N.D. Ill. 2002); *Hernandez v. Longini*, 1997 WL 754041 (N.D.Ill. 1997). Thus, the privilege set forth in Rule 26(b) is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit. *Schomburg v. New York City Police Dept.*, 298 F.R.D. 138, 142 (S.D.N.Y. 2014).[7] Here, a number of the documents were created by ASA Stack, who is not a party to the instant case. Nor is her employer. Hence, there is a question as to whether the privilege is properly raised. But since it is not an issue that is pursued by the defendants, we ought not and do not consider it.[8]

The vast majority of each page of each document does not reflect the author's impressions, theories, hypotheses, recommendations for future action or how an issue might be resolved. There is no assessment of past errors or opinions on what should have been done. There are no communications which if disclosed would temper the candor of government staff "'with a concern

---

[7] *Schomburg* concluded that while Rule 26(b) does not apply to non-parties, the work-product doctrine articulated in *Hickman,* 329 U.S. 495, 508 (1947), and its progeny may: "[C]ourts have extended work-product protection to non-parties when [doing so] vindicated the purposes underlying the [*Hickman*] doctrine." *Id*. at 142-43.

[8] It is not the obligation of the court to research and construct the legal arguments available to parties. *United States v. Alden,* 527 F.3d 653, 664 (7th Cir. 2008). Nor should a court go beyond a party's presentation and decide issues the party chose not to raise. *Fabriko Acquisition Corporation v. Prokos,* 536 F.3d 605, 609 (7th Cir. 2008); *Kay v. Board of Educ. of City of Chicago,* 547 F.3d 736, 738 (7th Cir. 2008).

for appearances ... to the detriment of the decision-making process.'" *Farley*, 11 F.3d at 1392. In the main, the documents were made after the State Court murder trial of Mr. Taylor and Mr. Patrick and, in the main, are merely factual narratives or synopses of what was recorded in police reports, pretrial motions, or trial transcripts. (In fact one or more of the documents bear the word "synopsis" in the title).

There are copies of public documents taken from court files, and other documents recount what is in those files. Illustrative is the document bearing Bates numbers SAO 07849-90. The second page of the document is captioned, "Attached as an Exhibit List for People v. Taylor Synopsis" and reflects 7 "Exhibits," consisting of "Tribune Articles from December 2001 to September 2007"; "Taylor's Arrest Report [Both Sides] and I-Bond Slip; "Map Drawn by Taylor to Illustrate his CR Confession"; GPR's and Supplemental Police Report Re: 023 Arrest"; List of Witnesses Read to Jury by Judge Hett"; ASA Styler's Notes From Branch 66 Interviews"; "Judge Lampkin's Dismissal of Zellner's PC." SAO 07850. The documents do not reveal their authors' mental impressions, conclusions, opinions, or legal theories of the State's Attorney or other representative "concerning the litigation." Rule 26(b)(3)(B). The documents are not core work product, but at most what is often known as factual work product, which is subject to disclosure on a showing of need – which is obvious here.

Following the "Exhibit List," is what is captioned "People v. Taylor Brief Overview" and consists of pages SAO 07853 - 07890. It is almost exclusively a running, day-to-day summary or overview of what happened in the criminal case two decades earlier. Other documents similarly recount the factual events involved in the case. "People v. Taylor Brief Overview" is a collection of all of the materials having anything to do with the criminal trial two decades earlier. The fact that

11

they were selected for submission to some higher authority reveals nothing other than the compiler's attempt at comprehensive evidence gathering. These documents most assuredly are not work product.

Moreover, their disclosure in the instant case would not, to borrow Justice Jackson's pithy but illuminating phrase, allow Mr. Patrick's counsel "to perform [their] functions. . .on wits borrowed from their adversary." *Hickman v. Taylor*, 329 U.S. 495, 516 (1947)(Jackson, J., concurring). *See also, Hobley*, 433 F.3d at 949 (work product "prevents a litigant from 'taking a free ride on the research and thinking of his opponent's lawyer.'"). Because "this is a civil case," and the file being sought is from a criminal case, "th[e] danger [of a subsequent attorney reaping the reward of work done by the prosecutor] is not present." *Schomburg v. New York City Police Dept*., 298 F.R.D. at 142-143. *See Abdell v. City of New York*, 2006 WL 2664313, *5 (S.D.N.Y. 2006).

In short, one need not invoke the basic principle that evidentiary privileges in litigation are not favored and are "not lightly created nor expansively construed, for they are in derogation of the search for the truth," *United States v. Nixon,* 418 U.S. 683, 710 (1974); *see also Pierce County, Wash. v. Guillen,* 537 U.S. 129, 144–145 (2003), to support the conclusion that neither the deliberative process privilege nor the work product doctrine warrants non-disclosure of most of the documents. And finally, with the exceptions noted below, even if a case could be made for work product protection, the plaintiff's obvious and pressing need for most of the withheld documents clearly trumps the defendants' interest in non-disclosure.

Finally, the defendants have not identified any particular entry in any document they claim is protected. Instead, they insist that not a single line of any of the materials they have submitted to me is outside the scope of the deliberative process privilege or work product doctrine. That

indiscriminate assertion of privilege is incorrect and simply not sustainable.

D.

There are some portions of documents, however, which at least arguably warrant retention as core work product. And so while the plaintiff's Motion to Compel [Dkt. #102] is granted in large measure, it is denied as to the following documents, which need not be produced:

1) From the document "People v. Daniel Taylor Overview" SAO 00314-332:[9]

    A) The last three lines on SAO 00315;

    B) Page SAO 00316;

2) From the document, "People v. Daniel Taylor Brief Overview" (SAO 07853-07890):

    A) The first six words of the first sentence of the second paragraph on SAO 07853;

    B) The last two lines on SAO 07855;

    C) The bracketed sentence in the sixth paragraph on SAO 07858;

    D) The bracketed material, *i.e.* the last sentence of the first paragraph on SAO 07859;

    E) The last two words of the first sentence of paragraph 2 on SAO 07861 and the second to the last sentence on that page;

    F) The bracketed word seven lines from the bottom on SAO 07873;

    G) The bracketed sentence on SAO 07875;

    H) The bracketed sentence at the top of SAO 07876;

    I) The word "note:" followed by the sentence in the fourth line at the top of SAO 07880;

---

[9] This document is three pages long, but apparently six identical copies have been produced for *in camera* review. *See* SAO 00314-00332. There are duplicate pages for other submissions as well.

J) The bracketed material after paragraphs 1, 2, 3, and 4 on SAO 07882;

K) The bracketed material after paragraphs 5, 6, 7, 8 and 9 on SAO 07883;

L) The 7th paragraph which starts with "Note:" on SAO 07885;

M) The bracketed material in the second paragraph of SAO 07887;

N) The first six words of the first sentence of the second paragraph of SAO 07853.

3) Documents numbers SAO 07288-90;

4) On page 2, lines 21 and 22 of SAO 07025;

5) SAO 07051;

6) All of the entries on SAO 07052 following the line on which appears this entry: "6-23-05 defendant filed second am pet to vacate";

7) On SAO 07053, the material underneath the first and second horizontal lines;

8) On SAO 07054, the material within the two horizontal lines;

9) The notes on SAO 07056-57;

10) The words at the bottom right hand corner of SAO 01572 beginning with the word "but" and ending with the word "hrs."

11) On SAO 01574, the parenthetical information on lines 8 through 12.

## CONCLUSION

The plaintiff's Motion to Compel [Dkt. #102] is granted with the exceptions noted above.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

**DATE: 7/1/2015**