IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEON PATRICK, ) | |
| Plaintiff, ) | |
| ) | 14 C 3658 |
| vs. ) | |
| ) | Honorable Judge Guzman |
| CITY OF CHICAGO, et al., ) | |
| Defendants. ) | |

**ASA DEFENDANTS' LOCAL RULE 56.1
STATEMENT OF FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Defendants, Assistant State's Attorney Joseph Magats ("ASA Magats"), Assistant State's Attorney Martin Fogarty ("ASA Fogarty"), by their attorney, Anita Alvarez, State's Attorney of Cook County, through Lisa M. Meador and Thomas E. Nowinski, Assistant State's Attorneys, pursuant to Federal Rule of Civil Procedure 56(b) and Local Rule 56.1(a)(3) hereby submit the following Statement of Material Facts in support of their motion for summary judgment.

**PARTIES**

1. Plaintiff Deon Patrick ("Patrick") currently resides in Chicago, Illinois. (TAB 1, First Amended Complaint, ¶ 8)

2. Defendant Martin Fogarty ("ASA Fogarty") is a former Assistant State's Attorney with the Cook County State's Attorney's Office ("SAO") and is currently practicing law as an attorney in private practice. (TAB 2, Martin Fogarty Deposition, p. 9, line 21-p. 10, line 3; p. 20, line 18-23)

3. Defendant Joseph Magats ("ASA Magats") is an Assistant State's Attorney with the Cook County State's Attorney's Office currently serving as Deputy Bureau Chief of the Criminal Prosecutions Bureau. (TAB 3, Joseph Magats Deposition, p. 8, line 14-16; p. 18, line 18-23)

4. Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois and at times relevant to Plaintiff's allegations Defendants Anthony Villardita,

Thomas Johnson, Rick Abreu, Terry O'Connor, Brian Killacky, Sean Glinski, and Michael Berti were duly appointed and sworn police officers employed by the Chicago Police Department ("CPD"). (TAB 4, Defendant City of Chicago's Answer to Plaintiff's First Amended Complaint, Answer to ¶9)

## JURISDICTION AND VENUE

5. Plaintiff's complaint invokes jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367; and 42 U.S.C. § 1983. (TAB 1, ¶5,6)

6. Venue is proper in this Court because all of the events at issue occurred in this judicial district. (TAB 1, ¶ 7)

## THE UNDERLYING CRIMINAL CASE

7. On August 8, 1992, Patrick was on parole from the Illinois Department of Corrections and on house arrest as a result of a 5 year sentence for two convictions for robbery and one for possession of crack cocaine. (TAB 5, Deon Patrick Deposition, p. 266, line 20-21; p. 284, line 19-22; p. 616, line 10-p. 617, line 5)

8. After his release from prison and despite being on house arrest, Patrick hung around the area of Hazel and Agatite in Chicago every day selling drugs with his fellow Vice Lord gang members Daniel Taylor, Rodney Matthews, Joseph Brown, Akia Phillips, Paul Phillips, and Lewis Gardner. (TAB 5, p. 27, line 4-13; p. 30, line 17-p. 32, line 23)

9. On November 16, 1992, Jeffrey Lassiter and Sharon Haugabook were shot and killed in Lassiter's apartment at 910 W. Agatite in Chicago, Illinois. (TAB 1, ¶12)

10. Lewis Gardner (also known as "Popeye"), Akia Phillips (also known as "Dion"), Daniel Taylor (also known as "Black T"), Paul Phillips, Deon Patrick (also known as "C-Deon"), Rodney Matthews (also known as "Rock"), Joseph Brown (also known as "Slick"), and Dennis

Mixon (also known as "Goldie") all implicated themselves and the others in the Lassiter/Haugabook murders through independent confessions. (TAB 6, Lewis Gardner Confession, TAB 7, Akia Phillips Confession, TAB 8, Daniel Taylor Confession, TAB 9, Paul Phillips Confession, TAB 10, Deon Patrick Confession, TAB 11, Rodney Matthews Confession, TAB 12, Joseph Brown Confession, TAB 13, Dennis Mixon Confession.)

### ARREST OF LEWIS GARDNER, AKIA PHILLIPS AND PAUL PHILLIPS

11. On December 2, 1992, Chicago Police Department 23rd District Tactical Officers Mark Forrest, Gerald Slonski, and Michael Collins were conducting surveillance for narcotics activities in the area of the 4300 block of North Hazel when they observed Lewis Gardner, Akia Phillips, and Paul Phillips standing in front of the entrance of the building. (TAB 14, Mark Forrest Deposition, p. 145, line 8-12, p. 146, line 10-21; p. 149, line 19-23; TAB 15, Vice Case Report, December 2, 1992, Bates number DT031186-DT031187)

12. Upon approaching the group, Officer Forrest heard Paul Phillips yell "Five-O" which was a warning signal that police were coming. Officer Forrest then observed Gardner and Akia Phillips each throw a bottle to the ground containing packets of crack cocaine. (TAB 14, p. 145, line 13-p. 146, line 7; p. 150, line 20-p. 152, line 9; TAB 15)

13. All three individuals were arrested and taken to the 23rd District. Lewis Gardner was charged with Possession of a Controlled Substance and set to be turned over to the Youth Division as he was 15 years old. Akia Phillips, who had given police the fake name of Dion Bonner and a fake birthdate claiming to be a juvenile, was charged with Possession of a Controlled Substance and also set to be turned over to the Youth Division. Paul Phillips was charged with a State Disorderly Conduct and was released from custody on an I-bond. (TAB 14, p. 152, line 2-p. 153, line 1; p. 185, line 2-4; p. 262, line 13-18; TAB 15; TAB 16, Paul Phillips

Arrest Report, December 2, 1992)

## LEWIS GARDNER CONFESSION

14. While at the 23rd District, Gardner asked Officer Forrest if he could talk to him in private. Officer Forrest walked Gardner down to the Youth office at which time Gardner spontaneously volunteered that he wanted to tell Officer Forrest that his drugs are supplied by C-Deon and that C-Deon was involved in the murder at 910 West Agatite. Gardner told Officer Forrest this because he felt guilty about his involvement in the murders. (TAB 14, p. 153, line 8-19, p. 159, line 1-4; p. 155, line 6-13; TAB 17, *People v. Gardner*, 93 CR 7106, March 10, 1995 Hearing Transcript, Bates stamped DEON003750)

15. As a result of this statement by Gardner, Officer Forrest asked Gardner if he would be willing to talk to detectives about the information he told Officer Forrest and Gardner agreed. The Detective Division was notified and Officers Forrest, Slonski and Collins drove Gardner to Area 6 Violent Crimes Unit at approximately 11:30 a.m. (TAB 14, p. 173, line 6-12; p. 175, line 20-p. 176, line 19; p. 194, line 24-p. 195, line 7)

16. Gardner was first interviewed by Detectives Villardita and Johnson at Area 6 on December 2nd at approximately at 7:00 p.m. and at that time advised the detectives of his involvement in the Lassiter/Haughabook murders as well as the involvement of Akia Phillips, Daniel Taylor, Paul Phillips, Deon Patrick, Rodney Matthews, Joseph Brown, and Dennis Mixon. (TAB 18, Anthony Villardita Deposition, p. 213, line 5-p. 214, line 24; p. 359 line 18-21; TAB 19, Supplementary Report Dec. 5, 1992)

17. After Gardner gave an oral statement to the detectives inculpating himself and the others in the murders, Detective Villardita called the State's Attorney's Office ("SAO") requesting a review of the case against Gardner for approval of felony charges. (TAB 18, p. 361, line 4-8)

4

18. ASA Fogarty was assigned by the SAO dispatch to go to Area 6 to review the Lassiter/Haughabook murders for felony charge approval and arrived at Area 6 at approximately 9:00 p.m. (TAB 2, p. 52, line 7-p.53, line 6; p. 74, line 11-22)

19. At the Area, ASA Fogarty reviewed any available police reports and was advised by the detectives that Gardner gave an oral statement inculpating himself and the others in the murders. (TAB 2, p. 76, line 8-21; p. 136, line 21-p. 137, line 8)

20. ASA Fogarty then spoke with Gardner on December 2nd at approximately 11:00 p.m., at which time ASA Fogarty advised Gardner of each of his Miranda rights, that he was a lawyer and state's attorney but not his lawyer or a public defender, and advised Gardner that he would be tried as an adult in this case. Gardner acknowledged each of these admonitions. (TAB 20, *People v. Gardner*, 93 CR 7106, March 10, 1995 Transcript, DEON003693-DEON003694, DEON003709; TAB 6)

21. Gardner then again gave an oral statement, providing the same information he had told the detectives, implicating himself and the others in the murders. Gardner agreed to have his confession memorialized in a court-reported statement. (TAB 2, p. 143, line 6-p. 147, line 4; TAB 20, DEON003693-DEON003694, DEON003697; TAB 6)

22. ASA Fogarty then ordered a court reporter to be dispatched to Area 6 in order to memorialize Gardner's confession. The court reporter arrived at Area 6 shortly before the court-reported statement was taken at 3:20 a.m. (TAB 20, DEON003694-DEON003695; TAB 2, p. 159, line 2-9; p. 162, line 4-9)

23. Youth Officer Heryman was present when ASA Fogarty spoke with Gardner. (TAB 20, DEON003692, DEON003695; DEON003700)

24. Gardner provided all of the information regarding the murders to detectives before he spoke

with ASA Fogarty or gave a court-reported statement. (TAB 18, p. 227, line 2-11)

### AKIA PHILLIPS CONFESSION

25. After taking Lewis Gardner to Area 6, Officer Forrest returned to the 23rd District at approximately 1:15 p.m., where he was advised that Akia Phillips had given them the false name of Dion Bonner and a false birthdate indicating he was a juvenile. Akia then needed to be reprocessed as an adult under his real name and birthdate. (TAB 14, p. 170, line 16-p. 171, line 10; p. 173, line 2-20)

26. Akia asked Officers Forrest, Slonski and Collins where Lewis was and Akia was advised that Lewis was over at the Area. Akia commented that Lewis must be over there on the Agatite thing. (TAB 14, p. 170, line 11-p. 172, line 5; p. 173, line 15-20.)

27. Officer Forrest then advised his supervisor of this statement by Akia and Area 6 Detectives Division was notified. Officer Forrest was instructed to bring Akia to Area 6. Akia was transported to Area 6 a few hours after Gardner. (TAB 14, p. 173, line 21-p. 175, line 17; p. 179, line 18-22; TAB 19; TAB 21, *People v. Akia Phillips and Paul Phillips*, 93 CR 7106, October 13, 1994 Transcript, Bates stamped City Def 011106)

28. Detectives first spoke with Akia on December 2nd at Area 6 at approximately 7:30 p.m. and at that time Akia advised Detectives O'Connor and Abreu of his involvement and the involvement of the other individuals in the murders. (TAB 22, Terrence O'Connor Deposition October 23, 2014, p. 202, lines 17-22; p. 213, lines 12-19; TAB 19)

29. After Akia gave an oral statement to the detectives inculpating himself and the others, the detectives sought approval of felony charges against Akia and advised ASA Fogarty of Akia's confession. (TAB 24, Ricardo Abreu Dep. p. 190, line 3-12; TAB 2 p. 175, line 18-p. 176, line 7; p. 181, line 24-p. 182, line 7; TAB 19)

30. ASA Fogarty then spoke with Akia at approximately 2:00 a.m. who again gave an oral confession, providing the same information he had previously told Detectives O'Connor and Abreu. Akia agreed to have his confession memorialized in a court-reported statement. (TAB 2, p. 173, line 21-p. 174, line 18; p. 182, line 24-p. 183, line 11; TAB 19; TAB 7)

31. Due to complexity of the case and the number of individuals in custody, SAO Felony Review Unit Trial Supervisor Anna Demacopoulos determined that additional assistance for review of these matters was warranted. (TAB 25, Anna Demacopoulos Deposition, p. 39, line 6-7, p. 67, line 18-p. 68, line 10)

32. In the evening on December 2nd, ASA Magats called the SAO dispatch to advise the office that he had completed a case review and was available for a new assignment. ASA Magats was advised by dispatch to contact Trial Supervisor Demacopoulos at Area 6. ASA Magats spoke with Demacopoulos who asked ASA Magats to come assist with the review of the Lassiter/Haugabook murders. (TAB 3, p. 89, line 12-22; p. 90, line 15-p. 92, line 1; p. 102, line 22-24)

## DANIEL TAYLOR CONFESSION

33. Based upon Gardner's confession, Daniel Taylor was arrested and brought to Area 6 on December 3rd at approximately 2:30 a.m. He was interviewed by Detectives Villardita and Killacky and advised the detectives of his involvement and the involvement of the others in the murders. (TAB 18, p. 234, line 16-19; p. 242, line 20-p. 244, line 9; TAB 19)

34. After Taylor gave an oral statement to the detectives inculpating himself and the others in the murders, Detective Villardita then sought approval of felony charges against Taylor. (TAB 26, Brian Killacky Deposition, p. 309, line 4-p. 310, line 21)

35. ASA Magats arrived at Area 6 sometime between 11:00 p.m. on December 2nd and the early morning of December 3rd. He was advised by the detectives that Taylor gave an oral statement

7

inculpating himself and the others in the murders. (TAB 3, p. 111, line 21-p. 112, line 7; TAB 26 p. 309, line 4-p. 310, line 21)

36. ASA Magats spoke with Taylor, introduced himself, advised Taylor of his Miranda rights, and that he was a lawyer and prosecutor, but not his lawyer or the public defender. (TAB 3, p. 364, line 11-24; p. 332, line 4-21; p. 365, line 10-p. 366, line 8)

37. Then Taylor again gave an oral confession, providing the same information he had given the Detectives implicating himself and the others in the murders. Taylor agreed to memorialize his confession in a court-reported statement. (TAB 3, p. 374, line 1-p. 376, line 18; TAB 8)

## PAUL PHILLIPS CONFESSION

38. Paul Phillips was arrested and brought to Area 6 on December 3rd at approximately 1:30 a.m. He was interviewed by Detectives Villardita and Johnson and advised the Detectives of his involvement and the involvement of the others in the murders. (TAB 27, Thomas Johnson Deposition, p. 207, lines 4-10; p. 210, lines 14-23; p. 214, line 22 – p. 215, line 11; TAB 19)

39. After Paul gave an oral statement to Detectives inculpating himself and the others in the murders, the Detectives sought approval of felony charges against Paul and contacted the SAO. On December 4th, ASA Fogarty went to Area 6 in response and spoke with Detective Johnson who advised ASA Fogarty of Paul's confession. (TAB 28, Martin Fogarty December 4, 1992 Memorandum)

40. ASA Fogarty then spoke with Paul at approximately 11:00-midnight, who again gave an oral confession, providing the same information he had told the Detectives implicating himself and the others in the murders. Paul agreed to memorialize his confession in a court-reported statement. (TAB 2, p. 225, line 9-p. 227, line 19; p. 235, lines 13-19; TAB 21, Bates number City Def 011191; TAB 9)

**DEON PATRICK**

41. On December 2, 1992, Deon Patrick was arrested by Detectives O'Connor, Abreu, Delaney, and Killacky at 11:30 p.m. at his house at 1637 S. Springfield and taken to Area 6. (TAB 5, p. 315, line 7-18; p. 316, line 17-20; TAB 22, p. 154, line 2-13; line 17-19; TAB 29, Patrick Arrest Report Dec. 2, 1992)

42. Patrick was advised by the detectives that they were from the Homicide unit. Patrick asked what they wanted with him and the detectives told him that they had some of his friends down at the police station saying that Patrick was involved in the murders on Agatite. Patrick knew the police were referencing the murders from November 16, 1992. (TAB 5, p. 320, line 21-p. 321, line 8; p. 323, line 12-p. 324, line 5)

43. When they arrived at Area 6 around midnight, Detective O'Connor advised Patrick of his Miranda rights and he and Detective Abreu questioned him about his knowledge of the murders. Patrick denied any knowledge. (TAB 23, Terrrence O'Connor Deposition Jan. 22, 2015, p. 115, line 13-22)

44. Patrick was taken for a lineup at on December 3rd at approximately 8:20 p.m, along with Daniel Taylor, Rodney Matthews, and Paul Phillips. Faye McCoy viewed the line-up and identified each of the men from the neighborhood but stated that she was afraid of them and she was not going to go to court. (TAB 33, Supplementary Report, December 3, 1992; TAB 23, p. 59, line 23-p. 60, line 6)

45. Detectives O'Connor and Abreu next spoke with Patrick at approximately 9:00 p.m. and Patrick advised the Detectives of his involvement and the involvement of the others in the murders. (TAB 23, p. 34, line 24-p. 35, line 3; TAB 22, p. 166, line 9-12, p. 167, line 1-8)

46. After Patrick gave an oral statement to detectives inculpating himself and the others, the

9

detectives sought approval of felony charges against Patrick and contacted Felony Review. (TAB 22, p. 168, line 1-16; TAB 19)

47. ASA Magats was assigned and arrived at Area 6 at approximately 10:00 p.m. at which time Detective O'Connor advised ASA Magats of Patrick's confession. (TAB 22, p. 168, line 6-15; TAB 30, *People v. Deon Patrick*, 93 CR 7106, March 9, 1995 Transcript, DEON002014)

48. Around midnight on December 3, 1992, ASA Magats spoke with Patrick for 30-35 minutes, with Detective O'Connor as the witness. ASA Magats introduced himself to Patrick, stated that he was an Assistant State's Attorney with the Felony Review Unit, that he was a lawyer and a prosecutor but not his lawyer or the public defender, which Patrick acknowledged. (TAB 22, p. 168, line 19-p. 169, line 20; TAB 3, p. 192, line 12-17; TAB 30, DEON002015-DEON002016)

49. ASA Magats advised Patrick of his Miranda rights which Patrick acknowledged. Patrick again gave an oral confession, providing the same information he had told the Detectives, implicating himself and the others in the murders. Patrick advised ASA Magats that he would agree to have his confession further memorialized in handwritten form. (TAB 22, p. 169, line 14-24; p. 171, line 2-8; TAB 30, DEON002014-DEON002020, DEON002033-DEON002039; TAB 10)

50. ASA Magats left the room and went back in a few minutes later to speak with Patrick alone to see how he had been treated, if he had been given something to eat and drink, if he was given cigarettes to smoke, and if he was allowed to use the bathroom. (TAB 30, DEON002020-002021)

51. Patrick advised ASA Magats that he was treated well by the State's Attorney and the police, that he was not made any promises for his statement nor was he threatened in any way, and that he was allowed to eat, drink, smoke, and use the bathroom. (TAB 3, p. 192, line 12-p. 193, line 4; TAB 30, DEON002020-DEON002021; TAB 10)

52. ASA Magats prepared a handwritten summary of Patrick's confession and returned to the

interview room with Detective O'Connor to review the statement with Patrick. ASA Magats had Patrick read the typed Miranda rights portion of the confession out loud to verify he could read and write English and had Patrick sign the rights portion. Patrick advised ASA Magats that he wanted the ASA to read the statement out loud while Patrick followed along. Patrick was told to advise ASA Magats if there were any changes he wanted to make to the confession. (TAB 30, DEON002022-DEON002024)

53. ASA Magats sat next to Patrick and read the confession out loud while Patrick followed along. Patrick advised ASA Magats that there was nothing he wanted to change on the handwritten confession. Patrick signed each page of the confession. (TAB 30, DEON002024-DEON002027; TAB 10)

54. Patrick never advised ASA Magats that he was not involved in the murders nor did ASA Magats note anything unusual about Patrick, have any concerns about him physically or mentally, or have any concerns about his treatment by police. (TAB 3, p. 183, line 21-p. 184, line 24)

55. Patrick was never mistreated in any way. (TAB 5, p. 373, line 8-22; TAB 10)

56. Patrick was indicted by the grand jury for the Lassiter/Haugabook murders.(TAB 31, Grand Jury Transcripts December 29, 1992, CCSAO000080-CCSAO000088)

57. Patrick claims that he confessed to the murders as part of a plan he devised to get before a judge so he could prove his innocence. (TAB 5, p. 394, line 8-17; p. 414, line 14-21; p. 604, line 7-14)

58. ASA Magats prepared the handwritten statement of Patrick based upon what Patrick told him. He did not use the statements of other witnesses to prepare Patrick's statement. (TAB 3, p. 197, line 13-20)

59. Patrick admits that he advised ASA Magats that he had agreed to give his confession. (TAB

11

5, p. 20-23)

60. Patrick never advised police of any alibi he had for the time of the murders. (TAB 5, p. 359, line 8-15)

61. ASA Magats contacted his supervisor, Trial Supervisor Anna Demacopoulos to discuss the detectives' request for felony charges as to Patrick. Based upon that discussion, Trial Supervisor Demacopoulos approved felony murder charges for Patrick. (TAB 3, p. 141, line 16-p. 142, line 3; p. 423, line 5-16)

62. When determining whether felony charges should be approved, a decision is made as to each individual defendant independent of any others involved. (TAB 3, p. 141, line 1-9)

63. All of the co-defendants were arrested by police for the murders before any of them were spoken to by an Assistant State's Attorney. (TAB 19)

64. Each of the suspects that confessed to their participation in the Lassiter/Haugabook murders had already confessed orally to police before they spoke to an ASA and agreed to memorialize their confessions. (TAB 3, p. 353, lines 17-20; TAB 2, p. 103, line 11-14; p. 181, line 24-p. 182, line 7; TAB 19)

65. ASA Fogarty never spoke to Deon Patrick while at Area 6 in December 1992. (TAB 2, p. 166, lines 12-15; TAB 5, p. 613, lines 6-8)

66. None of the statements of any of the criminal co-defendants were used against Patrick at his criminal trial because of Supreme Court decisions and the confrontation clause prohibited him from doing so. (TAB 32, Thomas Needham Deposition, p. 301, line 15-p. 302, line 4, p. 303, line 11-13)

67. Neither ASA Fogarty of Magats had the authority to independently approve felony murder charges for each of these individuals and approval was required by Trial Supervisor Demacopoulos. (TAB 3, p. 106, line 5-13)

68. Trial Supervisor Demacopoulos approved the charging decisions as to each criminal defendant in the Lassiter/Haugabook murders. (TAB 3, p. 106, line 5-13; TAB 25, p. 80, line 13-16)

69. At no time prior to approving charges as to each criminal defendant was either ASA Magats or ASA Fogarty made aware of any claim by Daniel Taylor that he was in Chicago Police custody on the night of the murders. (TAB 3, p. 298, line 16-p. 299, line 3; TAB 2, p. 211, line 1-14)

70. ASA Fogarty and ASA Magats were never aware or advised of any mistreatment of the suspects. (TAB 2, p. 418, line 13-p. 421, line 11; TAB 3, p. 388, line 17-p. 391, line 2; p. 395, line 4-p. 397, line 24; p. 430, line 1-19; p. 461, line 18-p. 463, line 8)

71. ASA Fogarty had no reason to doubt the truthfulness of the confessions given by Lewis Gardner, Akia Phillips, or Paul Phillips. (TAB 2, p. 316, line 13-24; p. 415, line 2-9)

72. ASA Magats had no reason to doubt the truthfulness of the confessions given by Daniel Taylor or Deon Patrick. (TAB 3, p. 134, line 6-9; p. 461, line 24-p. 462, line 5; p. 409, line 5-16)

### FELONY REVIEW

73. In December 1992, Martin Fogarty and Joseph Magats were assigned to the Felony Review Unit of the Cook County State's Attorney's Office. (TAB 2, p. 47, lines 13-24; TAB 3, p. 15 lines 5-7)

74. Assistant State's Attorneys assigned to the Felony Review Unit receive assignments when police officers seek the approval of felony charges based on their investigation of the crime and evidence that the police have gathered. (TAB 2, p. 52, lines 9-17)

75. Upon arrival at a police station to review a case, ASAs would ask the detective or officer who requested approval of felony charges for any available reports and any other evidence that the police had gathered and then would review those reports. (TAB 3, p. 100, lines 13-18; TAB 2, p. 78, line 13-p. 79, line 20)

76. In evaluating whether or not to approve felony charges, ASAs in Felony Review speak to the suspect in custody to hear what he/she has to say about what happened. (TAB 3, p. 133, line 20- p. 134, line 4)

77. The statement made by a suspect may be memorialized by either leaving it as an oral statement, reducing the statement to writing, or having the statement typed by a court reporter. (TAB 3, p. 147, line 1-8)

        Respectfully submitted,

        ANITA ALVAREZ
        State's Attorney of Cook County

By:   /s/ *Lisa M. Meador*
        Lisa M. Meador
        Thomas E. Nowinski
        Assistant State's Attorneys
        500 Richard J. Daley Center
        Chicago, Illinois 60602
        (312) 603-3369