# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEON PATRICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 14 C 3658** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **CITY OF CHICAGO,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

## I.
## INTRODUCTION AND FACTUAL BACKGROUND

In 1995, Deon Patrick was convicted in the Circuit Court of Cook County, Illinois, of two counts of murder, two counts of home invasion, and one count of armed robbery. He was sentenced to life imprisonment without parole. [First Amended Complaint, Dkt. #92, ¶ 4–5]. The Illinois Appellate Court affirmed the convictions and sentence on July 7, 1998, and five months later the Illinois Supreme Court denied a Petition for Leave to Appeal. Mr. Patrick made several unsuccessful attempts to obtain relief from his convictions, beginning with a *pro se* Petition for Post-Conviction Relief, (the "Petition") filed on June 2, 1999, in the Circuit Court of Cook County, claiming ineffective assistance of his trial counsel, John Theis, and his appellate counsel, Linda Kahn. [Dkt. #95, Exh. B].

The skillfully drafted Petition alleged that Mr. Theis refused to investigate or meet with the individuals whom Mr. Patrick identified as being his alibi witnesses.[1] In fact, the Petition

---

[1] While it is exceedingly unlikely that Patrick was its author, the Petition was clear, succinct, perfectly typed, paginated and paragraphed, and the citations to the cited cases and to the Illinois Code of Civil Procedure were in proper form.

alleged that Mr. Theis told Mr. Patrick he could not raise an alibi defense because of the incriminating statement he gave to the police, even though, the Petition alleged, Mr. Patrick told Mr. Theis that he was coerced into making that statement and that the statement was false. [Dkt. #95, Exh. B at 14-15]. To the Petition, Mr. Patrick attached a letter he wrote to Ms. Kahn in which he said he had told Mr. Theis that he wanted to testify but that Mr. Theis had talked him out of it, and had "lied" when he said that Mr. Patrick could not testify. The letter went on to say that Mr. Patrick had told Mr. Theis about alibi witnesses, to no avail. [Dkt. #95, Exh. C]. The Petition alleged that Mr. Theis failed to argue that Mr. Patrick's statement to the police was false and coerced, failed to properly investigate alibi witnesses, and effectively prevented him from testifying at trial. [Dkt. # 95-2, Exh. B at 8, 14-15]. Ms. Kahn, according to the Petition, failed to raise these claims on direct appeal.

Mr. Patrick also attached affidavits to the petition swearing that he told Mr. Theis that he had been coerced by the police into making a false statement, and that he wanted to explain to the jury where he was at the time of the murders. The affidavit went on to say that Mr. Theis told him that he "was not going to testify...." [Dkt. #95, Exh. D]. In another affidavit, Mr. Patrick swore he had told Mr. Theis prior to trial that he'd been coerced by the police into making a false statement, and that he had alibi witnesses. Mr. Theis, it was alleged, told him that he could not raise an alibi defense because of the statement he gave to the police, and that Mr. Theis refused to interview Audrey Mathews and Kimberly Jefferson, who could provide an alibi. [Dkt. #95, Exh E]. The Petition and Mr. Patrick's letter and affidavits were not filed under seal.

No protective order was sought or issued in the 1999 post conviction proceedings or over the intervening years, even though Mr. Patrick had counsel as long ago as 2003, and his present counsel have been involved in this case since at least 2013. [Dkt. #129 at 4]. Thus, the

information contained in the Petition and its attachments has been a part of the public record for almost two decades with no effort being made to procure an appropriate protective order from the Circuit Court of Cook County or from the United States District Court for the Northern District of Illinois following the filing of the Patrick Complaint in 2014.

The Petition was followed by a petition for a writ of *habeas corpus* filed on December 3, 1999, in the United States District Court for the Northern District of Illinois. [Dkt.## 95-2, 124]. The federal *habeas* petition was stayed while Mr. Patrick's claims were pending before the Illinois courts. The Petition was dismissed as untimely because it was filed more than three years after the date of the conviction. Counsel was not appointed. [Dkt. #124]. Mr. Patrick appealed, and the Illinois Appellate Court affirmed the dismissal. Leave to appeal to the Illinois Supreme Court was not sought. The federal *habeas* petition was denied on October 8, 2003. That ruling was not appealed. [Dkt. #124].

A decade later, Mr. Patrick sought to vacate his convictions, alleging actual innocence and the withholding of exculpatory evidence by the prosecution at his criminal trial. The Cook County State's Attorney's Office (CCSAO) did not object, and in fact, on January 10, 2014, moved to vacate Mr. Patrick's convictions and subsequently dismissed the charges against him. The CCSAO also did not oppose Mr. Patrick's petition for a Certificate of Innocence, which was granted on January 23, 2014 by the Chief Judge of the Cook County Criminal Court. [Dkt. #124].[2] Mr. Patrick then brought the present suit on May 19, 2014, alleging civil rights violations

---

[2] Illinois law provides for the issuance of what is called a "Certificate of Innocence" declaring that the petitioner was innocent of all offenses for which he or she was incarcerated. *See* 735 ILCS 5/2-702. The underlying petition must state facts in sufficient detail to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the offenses charged in the indictment. *Id.* at §702(d). The statute contains limitations on the purposes for which and the circumstances under which the Certificate can be used. These limitations are not pertinent to the present motion, and the issue of whether Illinois law or some other statutory or evidentiary principle will permit Mr. Patrick to have the Certificate admitted at trial is not implicated by the current motion.

under 24 U.S.C. § 1983 and several supplemental state law claims against the arresting officers, alleging they coerced a false confession from him and fabricated evidence against him. [*See* Dkt. ## 1, 92].

During discovery, the defendants deposed Mr. Patrick and Mr. Theis and sought to inquire about the conversations (and related topics) that were disclosed in Mr. Patrick's Petition and the attached letter and affidavits. Mr. Theis and Mr. Patrick refused to answer, invoking the attorney/client privilege and work-product protection. [Dkt. #95 at 2]. The defendants have moved to compel Mr. Patrick and Mr. Theis to answer these and other questions and produce documents related to their conversations at the time of the criminal trial in 1995.

While conceding that these conversations *were* covered by the attorney-client privilege in the 1995 criminal case, the Defendants insist that Mr. Patrick waived the privilege when, in 1999, he filed his Petition in which he revealed the content of his conversations with Mr. Theis.[3] Mr. Patrick does not dispute that the Petition resulted in a waiver of the attorney-client privilege in the proceeding in which it was filed, but argues that the waiver is limited to that proceeding and, in the words of the case on which he relies, is not operative "for all times and all purposes." *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003)(*en banc*), *cert denied*, *Woodford v. Bittaker*, 540 U.S. 1013 (2003). [*See* Dkt. #124].

The defendants, not unexpectedly, have a very different view of the proper scope of that waiver and of the applicability of *Bittaker* in the context of this case. If they are right, the waiver has a life beyond the 1995 state court proceeding, and the defendants are entitled to depose Mr. Patrick and Mr. Theis about the conversations disclosed in the Petition in which they discussed alibi witnesses and police coercion of Mr. Patrick. If, however, *Bittaker* is to be extended to the

---

[3] The fact that Mr. Patrick was proceeding *pro se* does not affect the waiver doctrine. *United States v. Pinson,* 584 F.3d 972, 974, 978 (10th Cir. 2009); *Jenkins v. United States,* 2010 WL 145850, *2 (E.D.Wis. 2010).

factual circumstances presented by this case, their motion to compel must be denied. As the briefs point out, this is a question on which there is precious little, if any, direct authority.

## II.
## ANALYSIS

### A.
### The Attorney-Client Privilege and the Law Governing the
### Questions Raised in This Case

The threshold question is whether state or federal law governs the issue of waiver of the attorney-client privilege – the oldest of the privileges for confidential communications known to the common law. *United States v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2320 (2011); *Hunt v. Blackburn*, 128 U.S. 464, 470–71 (1888). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice...." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege exists where legal advice is sought from a professional legal advisor acting as such, and the communication relates to that purpose and is made in confidence by the client. *United States v. Bey*, 772 F.3d 1099, 1101 (7th Cir. 2014); *Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314, 318 (7th Cir. 1963), *cert denied*, 375 U.S. 929 (1963).

The attorney-client privilege, like all testimonial privileges and all exclusionary rules, comes at a price. Since it makes the search for truth more difficult by preventing disclosure of what is often exceedingly relevant information, the privilege is strictly construed and is limited to those instances where it is necessary to achieve its purposes. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 185, 189 (1990); *Fisher v. United States,* 425 U.S. 391, 403 (1976); *Jenkins v. Bartlett,* 487 F.3d 482, 490 (7th Cir. 2007); *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983)(scope of privilege should be "strictly confined within the narrowest possible

limits"). Illinois courts subscribe to this view of the privilege as well. *Center Partners, Ltd. v. Growth Head GP, LLC*, 981 N.E.2d 345, 356 (Ill. 2012). Indeed, in Illinois, it is "the privilege, not the duty to disclose, that is the exception." *Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill.2d 178, 190, 579 N.E.2d 322, 327 (1991); *Doe v. Township High School Dist. 211*, 34 N.E.3d 652, 670 (1st Dist. 2015). These principles also apply to claims of work product. *See Gallegos v. Safeco Insurance Company of America*, 2015 WL 1009247, 2 (D.Colo. 2015); *Algonquin Heights v. United States*, 2008 WL 2019025, 7 (Fed.Cl. 2008).

Mr. Patrick's Complaint is based on 28 U.S.C. §1983, with jurisdiction pursuant to 28 U.S.C. §1331. [Dkt. #92, ¶5]. "Questions of privilege that arise in the adjudication of federal rights . . . [require courts to] address the question[s] as a matter of the federal common law of privileges." *United States v. Zolin*, 491 U.S. 554, 562 (1989). *See* Fed. R. Evidence. 501. State law therefore does not provide the rule of decision. The presence of supplemental state law claims for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy included in the First Amended Complaint [Dkt. #92, ¶¶126-143] does not change the applicability of federal common law. *See, e.g., Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 & n 3 (7th Cir. 1981); *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975); *Babych v. Psychiatric Solutions, Inc.*, 271 F.R.D. 603, 609 (N.D.Ill. 2010 ). *See also* S. Rep. No. 93-1277, 93d Cong., 2d Sess. at 12 & n 16 (1974)("It is also intended that the Federal law of privileges should be applied with respect to pendant [sic] State law claims when they arise in a Federal question case.").

**B.**

**Waiver of the Attorney-Client Privilege**

The attorney-client privilege, like other rights and privileges (including the work-product doctrine) can be waived. *United States v. Nobles,* 422 U.S. 225, 239 (1975); *United States v. Brock,* 724 F.3d 817, 821 (7th Cir. 2013). Waiver of the privilege can occur either explicitly or by implication. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). Express waiver of the privilege occurs primarily when information that would otherwise be privileged is not kept confidential. *United States v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987). Disclosure of confidential communications is inconsistent with the attorney-client relationship and almost invariably waives the privilege "with respect to the world at large; selective disclosure is not an option." *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003).

"'The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality as to others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 302 -303 (6th Cir. 2002). *See also Bittaker*, 331 F.3d at 719; *Sarkes Tarzian, Inc. v. U.S. Trust Co. of Fla. Sav. Bank*, 397 F.3d 577, 584 (7th Cir. 2005); *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.*), 348 F.3d 16 (1st Cir. 2003)*; Powers v. Chicago Transit Authority*, 890 F.2d 1355, 1359 (7th Cir. 1989). And information once disclosed to a party opponent waives the attorney-client privilege as to future proceedings. *See, e.g., United States v. Mass. Inst. of Technology,* 129 F.3d 681, 686 (1st Cir. 1997); *Genentech, Inc. v. United States Int'l Trade Comm'n,* 122 F.3d 1409, 1416, 1416–18 (Fed.Cir. 1997); *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 236 (2d Cir.1993); *In re Martin Marietta Corp.,* 856 F.2d 619, 623–24 (4th Cir.

1988); *In re von Bulow,* 828 F.2d 94, 101–02 (2nd Cir.1987); *United States v. Suarez,* 820 F.2d 1158, 1161 (11th Cir. 1987); 8 J. Wigmore, Evidence §2328 at 638–39 (McNaughton rev. 1961)("A waiver [of attorney-client privilege] at one stage of a trial should be final for all further stages, and a waiver at a first trial should suffice as a waiver for a later trial, since there is no longer any reason for preserving secrecy.").

Waiver can also occur by implication, which occurs when a party takes a position in litigation that makes it unfair to protect that party's privileged communications. The implied waiver doctrine ultimately is based on considerations of fairness: that is, a party may not use privilege as a tool for manipulation of the truth-seeking process. *Bittaker*, 331 F.3d at 719. The doctrine of waiver by implication reflects the position that the attorney-client privilege was intended as a shield, not a sword. *Center Partners, Ltd.*, 981 N.E.2d at 362.

In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege. 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence §503.41[1], at 503–104.1 to.2 (Joseph M. McLaughlin ed., 2003). *See also In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 145-146 (D.C. Cir. 2015); *Seneca Ins. Co., Inc. v. Western Claims, Inc.*, 774 F.3d 1272, 1278 (10th Cir. 2014). Courts that have imposed waivers under the fairness principle have tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question. Only those documents or portions of documents relating to the claim asserted by the client should be disclosed. *Bittaker*, 331 F.3d at 720.

## C.

### The Scope of Mr. Patrick's 1999 Waiver of the Attorney-Client Privilege

### 1.

While conceding that the attorney-client privilege and work product protection were waived in the state court litigation in which the Petition was filed, [Dkt. #124 at 9, 10 n.3], the plaintiff argues that the waiver is limited to those proceedings. The argument is based on the Ninth Circuit's *en banc* decision in *Bittaker v. Woodford*, *supra*. In *Bittaker*, a death row inmate challenged his conviction in the federal court via a petition for a writ of *habeas corpus*, claiming ineffective assistance of counsel. The State sought discovery of trial counsel's file, and the district court granted the motion. Bittaker refused to be deposed and refused to allow his trial counsel to be deposed or to allow the State access to his trial counsel's files without a protective order precluding dissemination of the discovered materials outside the federal *habeas* proceeding. *Bittaker*, 331 F.3d at 729 (O'Scannlain, J., concurring).

The district judge granted Bittaker's request for a protective order in advance of discovery, restricting the use of privileged communications that might be obtained in discovery by the State from the petitioner. 331 F.3d at 717 & n 1. The State appealed, asking that the protective order be vacated, contending that by virtue of the claim of ineffective assistance of counsel, the defendant had waived the attorney/client privilege, and that the waiver should extend to the retrial of the criminal case. The Court of Appeals, sitting *en banc*, upheld the action of the district court. For Mr. Patrick, *Bittaker* and the cases that have followed it[4] – all of which,

---

[4] *See, e.g., United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010); *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009); *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005); *Fife v. United States*, 2015 WL 2189712, at *2 (E.D. Wis. 2015); *United States v. Watson*, 2015 WL 1905881 (S.D. Ohio 2015); *United States v. Collyard*, 2013 WL 1346202 (D. Minn. 2013).

it should be noted, arose in corresponding factual situations[5]– must apply equally in a federal civil rights suit that charges the police with having framed the defendant. But "[a]cquiescence in a precedent does not require approval of its extension," *Dennis v. United States*, 339 U.S. 162, 175 (1950)(Frankfurter, J., dissenting), especially "to an entirely new context." *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014).

Indeed, since *Cohens v. Virginia,* 19 U.S. 264 (1821)(Marshall, C.J.), it has been accepted that general expressions in every opinion are to be read in context and not as "'referring to quite different circumstances that the Court was not then considering.'" *United States v. Ker Yang*, 799 F.3d 750, 755 (7th Cir. 2015). *See also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). When *Bittaker* is read in the animating and defining context of its facts, it is clear that it was not intended to and ought not apply to the very different situation presented by the instant case.

**2.**

*Bittaker's* focus was on the effect a "broad" waiver of the attorney-client privilege would have on the retrial of a state court criminal case in the event a claim of ineffective assistance of counsel were to succeed. The court concluded that if the federal courts were to require *habeas* petitioners to give up the privilege categorically, criminal defense attorneys "would have to worry constantly about whether their casefiles and client conversations would fall into the hands of the prosecution." Additionally, and perhaps more importantly, "they would have to consider the very real possibility that they might be called by the prosecution on a retrial of the criminal case as a witness against their clients...." From this, the court concluded that a "broad waiver rule would *no doubt* inhibit the kind of frank attorney-client communications and vigorous

---

[5] The plaintiff's response brief ignores this critical fact. [See Dkt. #124 at 1].

investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." 331 F.3d at 722 (emphasis supplied). No further explanation was given for this conclusion, and no evidence was given in support of it.[6]

Long experience has shown that criminal defense lawyers are made of stronger stuff than *Bittaker* (and Mr. Patrick) assume, and that it is unrealistic to presume that they would pursue the self-defeating and obviously unethical strategy of limiting their discussions with their clients and curtailing their investigative efforts to avoid being a possible witness on retrial. But accepting *Bittaker's* hypothesis in the context of a criminal case does not mean that it should apply in a federal civil rights case like Mr. Patrick's. If, absent a "narrow" waiver, there is not a reasonable likelihood or danger that a criminal defense lawyer will curtail his efforts on behalf of his client as *Bittaker* predicts, merely because at some point in the indeterminate future he might be a witness in a civil rights case – *Bittaker* alleviates any concern that defense counsel might have about being a witness in a retrial of the criminal case – *Bittaker* should not be extended outside the criminal context.[7]

For there to be a likelihood that *Bittaker's* dire prophesy would come to pass in the context of a case like Mr. Patrick's, the lawyer in the criminal case would have to make the following conscious calculation: (1) the defendant will likely be convicted;[8] (2) he will likely file

---

[6] The same is true of Mr. Patrick's brief, which recites the *Bittaker* prophecy about the supposed inhibiting effect a broad waiver would have on a defense lawyer's interactions with his client and his pursuit of possible defenses and concludes, without any analysis, that absent a narrow waiver, the same thing would happen in this and like cases. [Dkt. #124 at 9–10]. But conclusions without reasons are not persuasive. *United States v. Eiselt*, 988 F.2d 677, 680 (7th Cir. 1993).

[7] In the First Amendment context, the danger of a chilling effect must be based on a realistic likelihood of danger and not on tendentious speculation. *Faustin v. City and County of Denver, Colorado*, 423 F.3d 1192, 1199 (10th Cir. 2005). There is every reason why that requirement should obtain in cases like Mr. Patrick's.

[8] If the defendant is acquitted in the criminal case, the issue in *Bittaker* will never arise. And the civil rights suit will not of its own force waive the attorney-client privilege that the defendant (now plaintiff) and his

(continued...)

a postconviction claim for ineffective assistance of counsel; (3) he will likely prevail on that claim; (4) he will be retried and likely acquitted; or (5) if convicted, his conviction will likely be overturned or, in one way or another, at some point in the indeterminate future, be set aside; and (6) the vindicated defendant will bring a civil rights suit against police. This is necessarily a more complicated and extended analysis than the one *Bittaker* assumed a criminal defense lawyer in a state court criminal case would make. But experience and logic teach that no criminal defense lawyer in a state court criminal case would allow his fidelity to his client to be affected because of the speculative possibility that years in the future he might be a witness in a federal civil rights civil rights case, and consciously (and unethically) curtail his efforts in the criminal case. For to do so would increase the chance of a prosecution victory and with it the likelihood that he might be a witness years later in a civil rights case – the very thing that is sought to be avoided.

Thus, it is apparent that the argument for extending *Bittaker* beyond its criminal case origins to a federal civil rights case like Mr. Patrick's is bottomed on an unsupported and illogical assumption about how criminal defense lawyers think and act. It is thus unacceptable, since analysis should be "'guided by 'common sense and ordinary human experience.'" *United States v Montoya De Hernandez*, 473 U.S. 531, 542 (1985). *Accord Greenstone v. Cambex Corp.,* 975 F.2d 22, 26 (1st Cir.1992)(Breyer, C.J.); *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009); *Dabertin v. HCR Manor Care, Inc.,* 373 F.3d 822, 830 (7th Cir. 2004). *See also* Posner, How Judges Think at 116 (Harv. Univ. Press 2008). In considering whether *Bittaker* should be extended to Mr. Patrick's and like cases, we would do well to recall Justice Brandeis's

---

[8](...continued)
attorney had in the criminal case.  *See In re Lott,* 424 F.3d 446 (6th Cir. 2005). *Contra  In re Lott,* 424 F.3d at 456 (Boggs, C.J., dissenting)(raising claim of actual innocence waives the attorney-client privilege).

wise admonition: "the logic of words should yield to the logic of realities." *DiSanto v. Pennsylvania*, 273 U.S. 34, 43 (1927).

In sum, like the court in *Tennison v. City & County of San Francisco*, 226 F.R.D. 615, 623 (N.D.Cal.2005), I do not think that "there a likelihood that communications between a criminal defendant and his attorney will be chilled as a result of the limited waiver found under the circumstances of this lawsuit."

### 3.

Also conspicuously absent in the context of a case like Mr. Patrick's are the other concerns (which are constitutional in nature) that underlay *Bittake*r, namely ensuring that the retrial would not "immediately and perversely [be] skew[ed]...in the prosecution's favor by handing to the State all the information in the petitioner's first counsel's case file." *Id.* at 722. That result, the court held, would be dissonant with the goal of restoring the defendant to the position he would have occupied had the first trial been constitutionally error-free – that is, had he received effective representation. Giving the prosecution the advantage of obtaining the defense casefile and forcing defense counsel to testify against his client during the retrial "would assuredly not put the parties back at the same starting gate." *Id.* at 723. Here, there is no prosecutor, and no second criminal trial to be skewed in the prosecution's favor. Since the evils *Bittaker* predicted (in the context of a retrial of a state court criminal case) are not present in a federal civil rights case like Mr. Patrick's, the waiver of the attorney-client privilege in a federal civil rights suit need not be "narrow."

*Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012) explained *Bittaker* as holding that the defendant impliedly waived his attorney-client privilege when he filed his *habeas* petition so that therefore "he could not *later* [in discovery] expressly waive the privilege by simply disclosing

privileged documents without objection." *Id.* at 819 (Emphasis supplied). In this case, Mr. Patrick did not simply file a petition alleging ineffective assistance of counsel and "later" make explicit disclosures about communications between him and Mr. Theis. Rather, he attached to the Petition a letter disclosing one of those conversations and multiple affidavits, disclosing conversations he had with Mr. Theis. [*See* Dkt. #124]. Consequently, the sequence of events that the Ninth Circuit found necessarily precluded a "later" express waiver during discovery does not exist here.[9]

    *Bittaker* also concluded that were a "broad" waiver necessary to satisfy federal interests, the State's interest in protecting lawyer-client confidences might have to yield. 331 F.3d at 722. But, the court perceived no paramount federal interest that would be compromised by a narrow waiver and declined to enlarge the scope of the waiver beyond what was needed to litigate the ineffective assistance of counsel claim. *See Laughner v. United States,* 373 F.2d 326, 327 (5th Cir. 1967). In this case, there are federal interests involved in Mr. Patrick's case, namely how a case based on a federal civil rights statute is to be tried in federal court.

    It is obviously important that the trial be fair and that the jury's decision be an informed one. The defendants vigorously deny they did anything wrong and that the case is a sham, sinisterly orchestrated by Mr. Patrick, who they continue to insist is guilty of the murders. However, if Mr. Patrick is right, the defendants are guilty of the most despicable conduct and ought to be subject to condign punishment. For the jury to be able fairly to resolve this case and arrive at the truth, which is the goal of all trials, *United States v. Slone,* 833 F.2d 595, 597 (6th

---

[9] Illinois law requires that a postconviction petition have attached thereto "affidavits, records, or other evidence supporting its allegations" or explain why they are not attached. 725 ILCS 5/122–2 (West 2002). Noncompliance with this section can be fatal and can justify the petition's summary dismissal. *People v. Harris,* 862 N.E.2d 960, 967, 224 Ill.2d 115, 126 (2007). The plaintiff raises no argument based on this section of the Code of Civil Procedure, and so any argument that might have been raised is waived.

Cir.1987); *Center Partners, Ltd.*, 981 N.E.2d 345 at 356, 367; Rule 102, Federal Rules Evidence, the jury should have available to it all relevant, nonprivileged, admissible evidence. Under the circumstances of this case, a narrow waiver disserves that interest; a broad one furthers it.

**4.**

The conversations plaintiff voluntarily disclosed in the Petition are not privileged pursuant to Federal Rule of Evidence 502. Under Rule 502, when the disclosure of a communication covered by the attorney-privilege "is made in a state proceeding and is not the subject of a state-court order concerning waiver, the disclosure does not operate as a waiver in a federal proceeding if the disclosure: (1) would not be a waiver under this rule if it had been made in a federal proceeding; or (2) is not a waiver under the law of the state where the disclosure occurred." Here, plaintiff's voluntary disclosures of his conversations with his attorney were not the subject of a state-court order concerning the waiver. Plaintiff's disclosures would constitute a waiver in federal court. Additionally, plaintiff cites no Illinois law limiting the waiver made by plaintiff, and plaintiff has not pointed to any language in the Illinois Post-Conviction Hearing Act limiting waivers of the attorney-client privilege.

Often a disclosure of privileged communications waives the privilege as to all other communications on that same subject matter. *See, e.g.*, *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012); *Medicines Co. v. Mylan, Inc.*, 936 F. Supp. 2d 894, 903 (N.D.Ill. 2013). But subject matter waiver generally occurs only where the party holding the privilege seeks to gain some strategic advantage by disclosing favorable, privileged information, while holding back that which is unfavorable. *See In re Sealed Case*, 676 F.2d 793, 809 & n 54 (D.C. Cir. 1982); *Graco Children's Products, Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, 1995 WL 360590, *8 (N.D.Ill. 1995). That is not what is occurring here. Mr. Patrick has not

attempted to rely on any aspect of any conversation he ever had with Mr. Theis. Quite the contrary. He is quite adamant that none of those conversations should be admissible in this case. Mr. Patrick is therefore not seeking to use the privilege simultaneously "as a shield and a sword." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2nd Cir.1991). Hence, the traditional subject matter waiver ought not apply here.

## 5.
## The Work-Product Doctrine

The remaining issue to be decided is whether Mr. Theis and Mr. Patrick's claim of work product protection should be honored, or whether it, like the attorney-client privilege, has been waived. In an earlier decision in this case, we explored the work product doctrine, and that analysis need not be repeated. *Patrick v. City of Chicago*, 2015 WL 3989152, at *4 (N.D.Ill. 2015). It is sufficient for present purposes to note that the work-product doctrine "protects many of the same interests" as the attorney/client privilege, *Bittaker*, 331 F.3d at 722, n. 6, and, like the attorney-client privilege, it can be expressly or impliedly waived.[10]

At the parties' request, I conducted an *in camera* review of the documents for which work product protection has been claimed. Mr. Patrick's counsel has provided me with an "Index of Withheld Documents" attached to her letter to me of September 23, 2015. The difficulty is that some of the documents are difficult to read. But to the extent that I have been able to decipher the documents, many appear to be entitled to work product protection. Others do not appear to cast light on the central questions in this case. For the same reasons that the

---

[10] The work-product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3), which provides, in relevant part that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . [however,] those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(1)(B). But the question in this case is whether there has been a waiver of work product protection, not whether otherwise protected documents are discoverable pursuant to Rule 26(b)(3).

attorney-client privilege has been waived, that waiver extends to those documents that discuss or elaborate on the topics disclosed in the letter and affidavits  Mr. Patrick attached to his 1995 Petition.

Thus, those documents discussed in paragraphs 1, 2, 3 (but not any portions reflecting Mr. Theis's legal research), 4 and 5 of the Index should be turned over to the defendants. Since the waiver in this case extends to conversations between Mr. Theis and Mr. Patrick regarding the topics disclosed in the Petition and its attachments – there may be multiple conversations that are discoverable – the defendants need not turn over the documents referred to in paragraphs 6, 8, 9, 10 and 11 of the Index of Withheld Documents. There has there been no waiver of opinion work product, and thus any documents reflecting Mr. Theis's opinions, legal research, or strategies for the defense of the murder case need not be turned over. [11]

Counsel for Mr. Patrick must review the documents again to ensure that there is nothing in those listed in paragraphs 6, 8, 9, 10 and 11 that refers, reflects, or relates to the disclosures in Mr. Patrick's 1995 Petition and attachments. To the extent any of the documents contain such information, they must be turned over to the defendants.

## 6.

### The Decision in *Taylor v. The City of Chicago*

Daniel Taylor was also charged in 1995 in connection with the murders. In a separate trial, he was convicted and, like Mr. Patrick, spent more than 20 years in prison before being

---

[11] Opinion work product receives greater protection than ordinary work product, *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 663 (3rd Cir.2003) and "enjoys a nearly absolute immunity...." *Smith v. Scottsdale Ins. Co.*, 2015 WL 4569284, at *2 (4th Cir. 2015). The showing necessary to obtain opinion work product far exceeds the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product. *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992). Mr. Theis' mental impressions are not at issue in the instant case. For purposes of discovery all that is relevant is what Mr. Theis was told by his client in their conversations about the topics disclosed in the Petition and its attachments.

released. He has brought a separate suit under 42 U.S.C. §1983, alleging that the City of Chicago and several Chicago police officers coerced him into falsely confessing to the murders and concealed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). [14 C 737]. Mr. Taylor and his former criminal defense lawyer, Nathan Diamond-Falk, invoked the attorney-client privilege and work product doctrine during their depositions in the *Taylor* case. The defendants then moved to compel answers to certain questions, contending that Mr. Taylor's *Brady* claim resulted in an implied waiver of the attorney-client privilege and work product protection.

The *Taylor* court recently agreed, since Mr. Taylor's *Brady* claim is specifically about his treatment in police custody and "whether his attorney knew about the abuse." The court concluded "he has therefore placed at issue the conversation he and [his attorney] had relating to the allegedly coerced confession, and the attorney-client privilege does not shield them from answering questions on that topic." [14 C 737, Dkt. #219 at 9]. The court came to the same conclusion regarding whether the defendants' lawyer knew or should have known about the existence and identity of an alleged alibi witness. *Id.* at 13. These conclusions are in accord with and necessitated by basic principles under established *Brady* case law and principles of implied waiver.

To succeed on a *Brady* claim, a plaintiff must prove the existence of the facts claimed to be suppressed, that the facts meet the standard of constitutional materiality, and that he and his attorney lacked knowledge of that evidence. *Cf., California v. Trombetta,* 467 U.S. 479, 488–89 (1984); *United States v. Dupuy,* 760 F.2d 1492, 1502, n. 5 (9th Cir.1985)(no suppression when defense knew of undisclosed witnesses' identities); *United States v. Grossman,* 843 F.2d 78, 85 (2nd Cir. 1988)(no due process violation "where a defendant knew of or should have known the

essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source"); *Tennison*, 226 F.R.D. at 622–23.

Claims of implied waiver are guided primarily by "fairness" principles. *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23 (1ˢᵗ Cir. 2003); 8 J. Wigmore, *Evidence* § 2327 at 636 (J. McNaughton rev. 1961). And so, an implied waiver may be found where the privilege holder relies on a "legal claim or defense, the truthful resolution of which will require examining confidential communications." *Lorenz v. Valley Forge Insurance Co.*, 815 F.2d 1095, 1098 (7th Cir.1987). *See also, In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2nd Cir. 2000). In light of these fundamental principles, it is not surprising that the court in *Taylor* concluded that by virtue of his *Brady* claims, the plaintiff impliedly waived the attorney-client privilege and work product protection as to those communications the subject matter of which involved the allegedly withheld information. But since not all of the claims fell within this definition, the motion was granted in part and denied in part.

The defendants in the instant case contend that the *Taylor* opinion supports their arguments in this case. Mr. Patrick's view is that *Taylor* is irrelevant here, as the issues in the two cases are dissimilar. I agree. While the issues explored in the *Taylor* opinion and those involved here involve implied waivers, the issues are not congruent as evidenced by the dissimilar briefing in the two cases. It is not surprising that *Bittaker* and the cases and arguments based on it, while vital here, were not mentioned in the briefs in *Taylor*. [Dkt. ##201, 203]. Similarly, except for a tangential reference in the defendants' reply brief [Dkt. #129 at 2], *Brady* is not cited or discussed in the briefs in the instant case [Dkt. ##95, 124] even though *Brady* was the cynosure of the briefs and of the court's opinion in *Taylor*.

Finally, there is the argument that Mr. Theis' declaration filed in support of a motion for partial summary judgment has no relevance to this case. During his deposition, Mr. Theis did answer a number of questions, (*see*, Plaintiff's Response To City Defendants Motion To Cite Additional Authority, [Dkt. #177]), contrary to the intimation in the defendants' motion to cite additional authority. The focus of the questions and answers related to whether Daniel Taylor was in police custody at the time of the murders and how the answer to that question could have related to Mr. Patrick's defense. Mr. Theis' affidavit in support of the motion for partial summary judgment does not expand the scope of the waiver that exists in this case resulting from the Petition and its attachments.

**CONCLUSION**

*Bittaker* recognized that law, like life, often requires that a choice between competing alternatives be made. And so, the court held, a defendant in a criminal who had filed a postconviction claim for ineffective assistance of counsel case had to choose between protecting the confidentiality of communications with his criminal defense lawyer or pursuing his claim. If he chose to abandon his claim, the confidentiality of his communications would be preserved. If he chose to pursue his claim, the confidentiality of those communications would vanish. But choose he must. 331 F.3d at 720. The same is true for Mr. Patrick. And like the plaintiff in *Bittaker*, he cannot have both objects of his desire. That the choice between pursuing a claim or preserving the confidentiality of communications with one's lawyer presents difficult and incompatible alternatives does not, as *Bittaker* recognized, make it impermissible to require that the choice be made. The legal system "'is replete with situations requiring the making of difficult judgments as to which course to follow.'" *McGautha v. California*, 402 U.S. 183, 213 (1971). The fact that Mr. Patrick had to make such an election does not entitle him to judicial

shelter from the consequences of his choice. *Cf., United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000).

The Defendants' Motion to Compel Responses to Certain Discovery [Dkt. #95] is GRANTED IN PART and DENIED IN PART. Mr. Patrick and Mr. Theis shall answer the questions they refused to answer during their depositions pertaining to the conversations disclosed in Mr. Patrick's 1999 Petition for Post-Conviction Relief and the attached exhibits. The waiver resulting from those disclosures includes: (1) Mr. Patrick's claimed alibi witnesses; (2) whether Mr. Patrick told Mr. Theis he wanted to raise an alibi defense and identified alibi witnesses; and (3) whether Mr. Patrick was coerced by the police into making a false inculpatory statement. To the extent that the Defendants' questions seek information regarding discussions with Mr. Theis not disclosed in the Petition or its attachments, Mr. Patrick and Mr. Theis are nor required to provide that information.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/28/15