**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| DEON PATRICK, | ) | |
| *Plaintiff,* | ) | No. 14 C 3658 |
| v. | ) | |
| | ) | Honorable Ronald A. Guzman |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF DEON PATRICK'S RESPONSE TO THE OFFICER DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Following in the footsteps of the ASA Defendants, Defendants Anthony Villardita, Thomas Johnson, Rick Abreu, Terry O'Connor, Brian Killacky, Sean Glinski, and Michael Berti (the "Officer Defendants") have asked this Court to direct a verdict in their favor rather than allowing the jury to decide whether Plaintiff Deon Patrick ("Patrick") has proven his claims against them by a preponderance of the evidence. As with the motions filed by the ASA Defendants, this Court should deny the Officer Defendants' motion. The Officer Defendants' motion, which largely consists of conclusory statements, ignores the overwhelming amount of evidence that could cause the jury to rule in Patrick's favor on each of his claims against the Officer Defendants. Accordingly, the motion should be denied.

## I. Standards for Granting Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50(a), this Court may enter judgment in this trial on Patrick's claims as a matter of law if Patrick has been fully heard and "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." In *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986), the Supreme Court held that the standard for judgment as a matter of law under Rule 50(a) "mirrors" the standard for summary judgment under Rule 56, "which is that the trial judge must direct a verdict if, under the governing

law, there can be but one reasonable conclusion as to the verdict." In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Supreme Court explained that though a trial court "should review all of the evidence in the record" when considering a motion for a directed verdict,

> in doing so, however, *the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Id.* at 150-51 (emphasis added, citations and quotation marks omitted).

The Seventh Circuit holds that a court presented with a motion for a judgment as a matter of law under Rule 50 must determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict ***when viewed in the light most favorable to the party against whom the motion is directed***." *Tammi v. Porsche Cars North America, Inc.*, 536 F.3d 702, 707 (7th Cir. 2008) (emphasis added) (quoting *Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007)); *see also Baugh v. Cuprum S.A. De C.V.*, No. 08 C 4204, 2015 WL 9304338, at *2 & n.2 (N.D. Ill. Dec. 22, 2015) (Lee, J.) (noting that this standard applies to both motions for a judgment as a matter of law made during trial after the close of the plaintiff's evidence under Rule 50(a) and also to renewed motions filed after the jury's verdict under Rule 50(b)).

## II. The Jury Could Find For Patrick On Each of His Claims Against the Officer Defendants.

The Officer Defendants argue that the jury cannot find against them on any of Patrick's claims, but this assertion (as with the ASA Defendants' motions) is defeated by a simple

recounting of the evidence Patrick has presented and by a recitation of what inferences the jury could draw against the Officer Defendants as a result.

**A. The Jury Could Find Against the Officer Defendants on Patrick's Coerced Confession Claim.**

During trial, the jury has heard evidence that Defendants O'Connor, Abreu, and Villardita all participated in an almost 30-hour interrogation of Patrick during which Patrick was: (1) painfully handcuffed to a ring on the wall in such a way that he was not able to sit on the floor (3/21/17 Tr. at 1546:22-1547:20; 155:21-23); (2) given no food or drink and constantly woken up whenever he started to fall asleep (Id. at 1558:10-14; 1557:10-1558:14); (3) ignored when he repeatedly requested for his lawyer by name (Id. at 1562:11-12; 1571:1-8; 1619:5-7); (4) told that he would go to death row and never see his children again (Id. at 1561:12-21); (5) threatened that his interrogators would use force if Patrick did not confess, and made to believe that other officers were actively using force on Patrick's friend Rodney Matthews who he could hear from a nearby room (Id. at 1569:4-17); (6) repeatedly told that other people who had been arrested were implicating him in the crimes (Id. at 1546:11-16, 1552:9-15; 1557:1-7); (7) shown parts of the statements of other co-defendants that implicated him in the murders (Id. at 1557:1-7, 1558:19-1559:2, 1567:1-5, 22-25); (8) confronted with Daniel Taylor, who was brought into Patrick's interrogation room and then verbally identified Patrick as being involved in the murders (Id. at 1568:9-25); and (9) falsely told that a witness who viewed him in a lineup had identified him as someone who had been seen leaving the crime scene (Id. at 1569:22-1570:9). Patrick repeatedly established that the confession was fabricated by the Defendants, including the Defendant Officers, and that their tactics over the course of 30 hours in custody, resulted in his will being overcome. (Id. at 1570:13-21 ("I was breaking down to the point where I was feeling like I was defeated…" and "I just felt like I gave up at some point."); 1572:22-1573:2 ("So it got to the point where I just

didn't want to be there any more.")

It cannot be contended with a straight face that, when this evidence is viewed in the light most favorable to Patrick and all reasonable inferences are drawn in his favor, as it must be on this motion, the jury would be unable to find that the Officer Defendants unconstitutionally coerced Patrick into providing a self-incriminating statement that was not the product of his free will. There is also no dispute that Patrick's confession was used against him in his criminal trial, and indeed that it was the only substantive evidence used against him in that proceeding. (3/21/17 Tr. at 1631:23-1633:2).

The *single argument* advanced by the Officer Defendants is that one allegedly inconsistent prior statement Patrick made at his motion to suppress hearing in 1995, which he was questioned about during his cross-examination, somehow requires this Court to enter judgment as a matter of law on this claim. (Dkt. 353 at ¶5). But Patrick's prior statement, is simply one example of substantive evidence that must be weighed against all of the other examples of substantive evidence on the same issue. The weighing of evidence is a task reserved for the jury. *See Reeves*, 530 U.S. at 150-51. Put differently, it is the jury who must weigh all of Deon Patrick's prior and current statements to decide whether to credit some more than others in coming to its decision. *See also Liberty* Lobby, *supra*, at 255. ("Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") Thus, the recitation of a single inconsistent statement cannot support a motion for judgment as a matter of law. The Officer Defendants' prior inconsistent statement of Patrick presents absolutely no basis to discount the vast evidence recounted above and take this claim away from the jury. [1]

---

[1] Given that the single statement proffered as a basis why the Officer Defendants should win the coerced confession claim as a matter of law is one the jury should weigh, Patrick need not offer other statements made in the course of the same hearing that could *also* lead the jury to believe

### B. The Jury Could Find Against the Officer Defendants on Patrick's Claim for Fabrication of Evidence

The Defendant Officers claim that Patrick has failed to set forth sufficient evidence to meet the *prima facie* elements of a fabrication claim. [Dkt. 353 at ¶ 6]. This is simply incorrect. As discussed at great length in Patrick's consolidated memorandum in response to the defendants' motions for summary judgment, Patrick alleges that the Officer Defendants participated in creating three separate categories of knowingly fabricated evidence: (1) the confessions of Patrick and his co-defendants who were also charged with the murders; (2) the "Fabricated Lineup Report" which falsely stated that Faye McCoy was "afraid" to go to court and purposefully omitted her statement that the four co-defendants she recognized in the lineup (including Patrick) were ***not*** among the four men she saw leaving the crime scene; and (3) the various "Taylor-not-in-lockup" evidence that was created to undermine and contradict the arrest report and bond slip which stated that Daniel Taylor was in lock-up at the time of the murders and pre-murder planning meeting and was not released until 10:00 p.m. on November 16, 1992. (*See* Dkt. 158 at 16-19.)

Patrick presented evidence of these same fabrications at trial, plus, offered the additional evidence that two police reports created by Villardita and Johnson regarding the conversation they had with Officer Gillespie about the Daniel Taylor bond slip were fabricated. (PTX56 and PTX67). At trial, Faye McCoy's testimony flatly contradicted what Detective Villardita testified she told him during the lineup. (3/8/17 Tr. at 152:9-154:18 (McCoy) versus 3/13/17 Tr. at 543:11-545:11 (Villardita).) In addition, all of the underlying defendants who are living testified at trial and denied that the confessions were true, and testified that the confessions were fabricated. (4/5/17 Tr. 3659:15-3661:13 (Gardner), 4/6/17 Tr. 3758:2-4 playing A. Phillips' Dep. at 156:9-1, 160:24-

---

that the one statement Defendants single out is not sufficient to negate all of the other overwhelming evidence of coercion.

161:4, 161:15-165:23 (Akia Phillips), 3/21/17 Tr. at 1621:12-14 (Patrick, and *see* Section A above); 3/27/17 Tr. at 2299:8-2300:10 (Matthews), and 3/28/17 Tr. at 2414:12-15 (Paul Phillips)). The fabricated evidence regarding Taylor in lock up was also published to the jury, including the December 7-8 and January 4 police reports regarding the alleged interviews Villardita and Johnson had with both Adrian Grimes and Officer Gillespie and the Berti/Glinski December 14, 1992 report. (PTX56, PTX67 and PTX60). This Court has already concluded in its summary judgment decision that a jury could conclude from this evidence that the Officer Defendants knowingly fabricated evidence and that that evidence deprived Patrick of his liberty. (Dkt. 208 at 25-27), and at trial we offered even more evidence than on summary judgment.

In their motion for judgment as a matter of law, the Officer Defendants refer only to Defendant Magats' testimony that he handwrote Patrick's statement based on a conversation with him. (Dkt. 353 at ¶ 6). Of course this is entirely contradicted by Patrick's testimony and even partially contradicted by O'Connor, who says that he and Magats went in to Patrick's room "intermittently" between the first and second converations, and that Magats handwrote certain things while in the room with Patrick (4/3/17 Tr. 3324:10-16 (deposition video clip of O'Connor dep at 142:15-143:24 and 144:16-145:3). This Court can grant judgment as a matter of law only if a jury *could not find* in Patrick's favor when all of the evidence and reasonable inferences drawn therefrom are viewed in his favor. In light of the evidence recounted above that that jury heard regarding the fabricated evidence, the jury could absolutely find in Patrick's favor on his fabrication claim.

The Officer Defendants also have the audacity to assert (without elaboration) that there was no evidence that any Defendant Officer fabricated any police reports. [Dkt. 353 at ¶ 6]. But, as noted above, the McCoy lineup report that Defendant Killacky authored, the Villardita and

Johnson police reports regarding Grimes and Gillespie, and the Berti/Glinski report, are all evidence of fabrication, and were offered (along with testimony establishing they were fabricated) at trial (*See also* DTX298 and DTX299). The Defendant Officers also incorrectly assert that there is no evidence that unspecified "police reports" were used against Patrick at his criminal trial, but this Court already considered that issue after extensive briefing and concluded that fabricated evidence need not have been actually used at Patrick's trial for it have caused him to be deprived of liberty, which is a causation issue reserved to the jury. (Dkt. 208 at 21-23.) *See, e.g., Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) where the Seventh Circuit held that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty *in some way*." (emphasis added). *Whitlock* explains further that whether fabricated evidence is "used" to deprive a defendant of liberty depends on standard tort principles of causation, which require a court to "analyze the relation between an official's conduct and a resulting injury." *Id.* at 583. There is also no dispute that Patrick's confession was used at his criminal trial (3/21/17 Tr. at 1629:4-16:30:16), and this Court agreed that the Fabricated Lineup Report was used at Patrick's trial "as impeachment evidence to discredit legitimate evidence of innocence" that Faye McCoy has testified to. (*Id.* at 27.) For all of these reasons, the Officer Defendants' motion for a directed verdict in their favor on Patrick's fabrication claim should be denied.

### C. The Jury Could Find Against the Officer Defendants on Patrick's Claim for Failure To Intervene

The Officer Defendants state in a single sentence that Patrick's claim for failure to intervene must "fail" because of their arguments that this Court should grant judgment as a matter of law on Patrick's coerced confession and fabrication claims. (Dkt. 353 at 3.) The jury has heard ample evidence that, in addition to the Officer Defendants directly violating Patrick's

constitutional rights, other Officer Defendants should be found liable for failure to intervene to prevent those violations. Nearly all of the Defendants participated in the arrests of the underlying suspects, including Patrick, and interrogated them all in various combinations of detectives. (*See* the notation of arresting officers and those who participated in taking statements of the suspects in the December 5, 1992 "Cleared and Open" supplemental report – PTX53). The jury has also heard that Officers O'Connor and Abreu worked together to interrogate Patrick. (Id.) Patrick also testified that Villardita (who is not listed on PTX53 as having interacted with him) came into his room several times and pressured him to confess (3/21/17 Tr. at 1561:12-21) and also took him out of lockup after he confessed to take him to Rodney Matthews' and Joe Brown's rooms (3/21/17 Tr. at 1607:24-1608:7). As described above, these Officer Defendants created the other allegedly fabricated evidence that was used to counter Daniel Taylor's lock-up alibi and deprive Patrick of liberty. Accordingly, the jury could easily conclude that individual Officer Defendants had a realistic opportunity to prevent other defendants from violating Patrick's constitutional rights but took no action to do so, and thus that Officer Defendants are liable for failure to intervene.

**D. The Jury Could Find Against the Officer Defendants on Patrick's Claim for Malicious Prosecution**

The Officer Defendants argue that judgment as a matter of law must be entered on Patrick's malicious prosecution claim because Patrick has failed to present evidence that would allow the jury to find that there was no probable cause for his criminal proceeding. This Court has already explained in its summary judgment decision that: (1) because of Lewis Gardner's testimony that he did not confess on his own and was instead tricked into adopting a prefabricated story that had been concocted by the Officer Defendant, it is an issue of fact whether Gardner's confession and the confessions that were obtained after he confessed created probable cause for Patrick to be arrested (4/5/17 Tr. 3659:15-3661:13); (2) Patrick's malicious prosecution regardless turns on

whether probable cause existed at the time he was *charged* rather than at the time of his interrogation; (3) Patrick's indictment by a grand jury is not *prima facie* evidence of probable cause if the indictment was procured through false or fraudulent testimony; and (4) the existence of probable cause may change as a case evolves, meaning that the defendants can still be liable for malicious prosecution even if they initially believed there was probable cause for Patrick's prosecution if they later engaged in misconduct such as fabricating confessions for Patrick and the other criminal co-defendants to sign. (*See* Dkt. 208 at 36-37.) The jury heard evidence supporting each of these points, including that:

- Lewis Gardner did not participate in the murders or confess to his participation on his own; he instead was coerced into adopting a fabricated confession that was presented to him on a spiral notebook. Because he could not read well, the information was presented by the Officer Defendants and he was told to memorize it (4/5/17 Tr. 3659:15-3661:13).

- Akia Phillips (who was also listed as providing probable cause for arrest of Patrick) did not voluntarily confess. His testimony came in thru his video deposition (4/6/17 Tr. 3758:2-4, in which he established that the confessions were "prewritten" and that he was coerced into saying "yes sir" to everything that he did not already know (like his name, age and school - Akia Phillips Dep. at 156:9-1, 160:24-161:4, 161:15-165:23). He also said that his confession, as it says, was procured in part because the detectives and ASA Fogarty said they would drop his drug charge in exchange for a confession. Id. O'Connor and/or Fogarty in O'Connor's presence had Akia handwrite a change on this portion, which the jury can infer was fabricated. (3/29/17 Tr. at 2760:15-2761:3).

- Deon Patrick, Rodney Matthews and Paul Phillips similarly testified that their confessions were false, coerced and fabricated. (3/21/17 Tr. at 1621:12-14; 3/27/17 Tr. at 2299:8-2300:10;3/28/17 Tr. at 2414:12-15).

- The evidence presented to the grand jury that indicted Patrick tracked the allegedly fabricated confessions that Patrick and the other criminal co-defendants had adopted 4/3/17 Tr. 3329:16-20; and

- After the Officer Defendants learned of Daniel Taylor's arrest report and bond slip that stated he was in lock-up on the evening of November 16, 1992 until 10:00 p.m., PTX1 and PTX2), Defendants Villardita, Johnson, Berti and Glinski created knowingly false police reports and compelled witnesses to provide knowingly false testimony in an effort to undermine the arrest report and bond slip (PTX56, PTX60 and PTX67).

Based on this evidence, the jury could find that no probable cause existed for Patrick to be charged and thus that the Officer Defendants are liable for malicious prosecution.

The Officer Defendants also argue without elaboration that Patrick has "failed to set forth any evidence that the [Officer Defendants] acted with malice." (Dkt. 353 at 3.) In the context of a malicious prosecution claim, "[m]alice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Holland v. City of Chicago*, 643 F.3d 248, 255 (7th Cir. 2011) (quoting *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App.3d 340 (2000)). Malice can also "be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith." *Id.* There can be no question that if the jury finds that the Officer Defendants created a script for the manner in which these crimes occurred, and coerced Patrick and the other co-defendants to sign fabricated confessions matching the script, then doubled down to both hide and fabricate additional evidence to conceal that the confessions they had fabricated were false, the jury could easily find that they acted with malice. Accordingly, the Officer Defendants' motion must also be denied as to Patrick's claim for malicious prosecution.

**E. The Jury Could Find Against the Officer Defendants on Patrick's Conspiracy Claims**

Based on all the evidence recounted above, the jury could also clearly find that the Officer Defendants participated in a conspiracy to unconstitutionally coerce Patrick's confession, fabricate evidence that was used to deprive him of liberty, and/or maliciously prosecute him for murder. As this Court noted in its summary judgment decision, "the existence of a conspiracy may be inferred through the combination of common sense and circumstantial evidence." (Dkt. 208 at 38.) Because of that method of proof and the evidence in this case, this Court concluded in its summary judgment decision that a reasonable jury can find the defendants liable for conspiracy and gave "just one example" of how:

> [Patrick] and his codefendants have stated via sworn deposition that Defendants coerced and fabricated their confessions --- a point not to be taken lightly since each of them was either acquitted at trial, had his case dismissed, or had his conviction later overturned. These confessions, moreover, each placed Taylor at the murder scene, whereas his arrest and bond slip placed him in CPD lockup. Based on the lockup evidence, a reasonable jury could conclude that Taylor could not possibly have been at the murder scene, and, combined with the working relationship between the Officer Defendants and the ASAs, that same jury could also infer that the only way to get eight people to confess (separately) to witnessing an impossible event (viz., Taylor being at the murder scene) would be through conspiracy. This is precisely the sort of circumstantial evidence that precludes summary judgment on a conspiracy claim.

(Dkt. 208 at 38-39.) At trial, Patrick and his co-defendants gave the same testimony about how their confessions were obtained as they testified to in their depositions. *See* Section A above. Because of that evidence and the ample evidence that their confessions were false and were fabricated, a jury could find the Officer Defendants liable for conspiracy in a manner laid out in the example given by this Court. *See Anderson*, 477 U.S. at 250 (1986) (stating that standard for directed verdicts under rule 50(a) "mirrors" the standard for summary judgment under Rule 56).

**F. This Court Should Not "Sanction" Patrick by Directing a Verdict in favor of the Officer Defendants**

The Officer Defendants' final argument is that this Court should enter judgment in their favor not because a jury could not find in Patrick's favor on the basis of the evidence it has heard, but as an exercise of this Court's inherent power to sanction a party "who has willfully abused the judicial process or otherwise conducted litigation in bad faith." (Dkt. 353 at 4.) The irony that this outrageous contention is coming from the Officer Defendants cannot be overstated, and it takes all measures of restraint to refrain from citing proverbs regarding pots and kettles. The only acts of alleged "bad faith" the Officer Defendants refer to are instances where, they contend, Patrick was impeached during his cross-examination. (Id. at 3-4.) Instances of impeachment occur at every trial, and the proper course of action is for the jury to weigh all of the evidence of inconsistent testimony against the evidence that party has affirmatively presented in the course of

reaching a verdict. Entering judgment as a matter of law on *any* of Patrick's claims because of prior inconsistent statements – particularly on the types of tangential issues Defendant Officers' are so fixated on would be a miscarriage of justice and would usurp the role of the jury.

**CONCLUSION**

For all of these reasons, Patrick respectfully requests that this Court deny the Officer Defendants' motion for judgment as a matter of law and allow the jury to decide Patrick's claims against them.

Dated: April 7, 2017

Respectfully submitted,
*Deon Patrick, Plaintiff*

/s/ Nicole Nehama Auerbach

Nicole Nehama Auerbach
Stuart J. Chanen
VALOREM LAW GROUP
218 N. Jefferson St., Suite 300
Chicago, IL 60661
(312) 676-5460
Nicole.auerbach@valoremlaw.com
Stuart.chanen@valoremlaw.com

**CERTIFICATE OF SERVICE**

I certify that on April 7, 2017, I caused a copy of the attached document, **PLAINTIFF'S DEON PATRICK'S RESPONSE TO OFFICER DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**, to be served upon all counsel of record via the Court's ECF system.

*/s/ Nicole Nehama Auerbach*